14-90027-am

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2014
(Decided: May 15, 2015; Amended: May 22, 2015)[1]

Docket No. 14-90027

_____

In re Andres M. Aranda,

*Attorney.*

_____

Before:       CABRANES, SACK, and WESLEY, *Circuit Judges*.

_____

Andres M. Aranda, a member of this Court's bar, is publicly reprimanded and suspended from practice before this Court for eighteen months, based on the misconduct described below.

_____

For Andres M. Aranda:          Andres M. Aranda, *pro se*,
                               Bronx, New York

---

[1] We amend this opinion as a result of recent developments in Patricio Sanchez's criminal proceedings, discussed in section II(A). The deadlines found in section VI are to be calculated using the original issuance date of this opinion, May 15, 2015.

**PER CURIAM**:

Andres M. Aranda, who was admitted to the New York State bar in 1979 and to this Court's bar in 2012, was ordered to show cause why disciplinary or other corrective measures should not be imposed on him, based primarily on his numerous defaults in several appeals in this Court. For the reasons stated below, we publicly reprimand Aranda and suspend him from practice before this Court for eighteen months, both for his misconduct in those appeals and for his failure to properly respond to our order to show cause.

## I. Defaults in This Court

Aranda's defaults are described in detail in the order to show cause, which will be reissued this date as a public decision. That order required Aranda to provide, *inter alia*, an explanation for all of the described conduct. We find his response inadequate for a number of reasons.

### A. *United States v. Thompson (Manigault)*, No. 11-1761 (L)

Aranda represented Anthony Manigault in his direct appeal from a criminal judgment sentencing him to, *inter alia*, 120 months' imprisonment. Aranda defaulted on a number of occasions in the appeal: he failed to pay the

filing fee or file numerous required documents, including his brief, by the deadlines mandated by this Court's rules and orders. The appeal was eventually dismissed based on Aranda's defaults. Luckily for Aranda's client, however, the appeal was later reinstated and, upon the Government's motion, the case was remanded to the district court and the client was resentenced to 66 months' imprisonment.

In his response to our order to show cause, Aranda acknowledged only that he had failed to timely pay the filing fee and failed to timely file a court form. He attributed those defaults to his "inexperience and unfamiliarity with the filing procedures of this Court." Response ¶ 9. He also stated that his conduct did not prejudice his client. *Id.* ¶ 10.

Aranda's explanation for his conduct in *Thompson* is deficient for several reasons. First, he did not mention the numerous other defaults noted in our order to show cause, which extended far beyond the filing fee and a single form. Second, Aranda's proffered reason for the defaults, his unfamiliarity with this Court's "filing procedures," does not explain why he failed to comply with Court orders that identified his defaults and instructed him to cure the defaults by specified deadlines. Nor does his proffered reason

3

explain why multiple telephone calls from the Court were required before he cured some of his defaults.

Third, Aranda's discussion of the prejudice faced by his client in *Thompson* focused solely on the end result – the resentencing to a shorter term of imprisonment – without mentioning Aranda's own responsibility for the dismissal of the appeal, or the risk to his client that his defaults could have foreclosed the sentence reduction. *See In re DeMell*, 589 F.3d 569, 573 (2d Cir. 2009) ("[A] reasonable attorney with thirty years experience . . . clearly would know that defaulting on a client's case leaves open the possibility of severe prejudice . . . .").

We also note that, even if Aranda's defaults in *Thompson* (and in the cases discussed below) caused little or no prejudice to his clients, he nonetheless "caused prejudice of a different type: he wasted the time of opposing counsel, Court employees, and judges; delayed the processing of other litigants' cases; and caused unnecessary expense to the public." *In re Gordon*, 780 F.3d 156, 159 (2d Cir. 2015).

**B.** *United States v. Vallejo*, **No. 13-468**

Aranda represented Gaspar Vallejo in his direct appeal from a criminal

judgment sentencing him to, *inter alia*, forty-six months' imprisonment. As noted in our order to show cause, Aranda's default nearly caused the dismissal of the appeal, which was avoided only through several telephone calls from this Court regarding his default. Aranda's response to the order to show cause did not mention the default, the threatened dismissal, or the telephone calls, but instead discussed only his reasons for later moving to withdraw from the case. *See* Response ¶ 11.

Aranda's response also did not address the risk of serious prejudice to his client posed by his default – specifically, the substantial risk that the appeal could have been dismissed. *See Gordon*, 780 F.3d at 159 ("Despite the Court's forbearance in those situations, dismissal of the appeals based on Gordon's defaults was a distinct possibility (particularly where there had been a pattern of defaults) and, therefore, he exposed his clients to potentially serious prejudice.").

**C. *United States v. Gabriel*, Nos. 13-1625 and 13-1655**

Aranda represented Leonardo Gabriel in two appeals from a criminal judgment sentencing Gabriel to, *inter alia*, 240 months' imprisonment. Both appeals were dismissed based on Aranda's defaults. Although both were

later reinstated, Aranda defaulted on a number of other occasions and incorrectly informed the Court that district court transcripts were not yet available. In his response to our order to show cause, Aranda stated that he had never intended to neglect Gabriel's appeals and that his secretary had been told that the district court transcripts were not ready each time she inquired. *See* Response ¶¶ 20-21. He did not otherwise discuss the many defaults noted in our order or the dismissal of the two appeals.

### D. *United States v. Guerrero (Delgado)*, No. 11-4489

Aranda represented Hector Delgado in an appeal from a criminal judgment sentencing Delgado to, *inter alia*, 128 months' imprisonment. We ordered Aranda to explain his defaults in that appeal, although the defaults were not individually identified in our order to show cause. In his response, Aranda stated simply that "there is nothing in the record to show that [his] work in that matter was deficient or in violation of any courts [*sic*] rules and procedures." Response ¶ 19.

To the contrary, the public docket for *Guerrero* clearly reflects that Aranda defaulted on several occasions. Specifically, the docket includes three separate orders of this Court stating that Aranda had failed to file two

6

required forms and his brief; two of those orders threatened dismissal of the appeal if the defaults were not cured. *See Guerrero*, No. 11-4489, docs. 3, 12, 13. Other orders noted that Aranda had filed defective documents, *see id.*, docs. 24, 31, and that he had failed to cure one of the defective documents despite having been given notice, *see id.*, doc. 28. Each of the Court's orders identified the rules that had been violated. Thus, contrary to Aranda's conclusory assertion, the record does reflect that his performance in *Guerrero* was deficient and that he violated a number of the Court's rules.

### E. *United States v. Batista*, No. 12-1621

Aranda represented Marco Batista in his appeal from a criminal judgment sentencing him to, *inter alia*, 244 months' imprisonment. The docket for that appeal reflects the following: Aranda defaulted on several occasions, including by failing to file a brief; the Court informed him that the appeal would be dismissed if the brief was not timely filed; he filed a defective motion to be relieved; he failed to cure that defective motion despite repeated requests from the Court; and he was *sua sponte* relieved when it became apparent that he would not comply with the Court's instructions. Batista, proceeding *pro se*, later informed the Court that he was having difficulty

7

preparing his brief due to, *inter alia*, Aranda's failure to provide requested documents. *See Batista*, No. 12-1621, doc. 51 at ¶¶ 3-4; doc. 63 at ¶ 5. The appeal ultimately was dismissed, based on Batista's failure to file his brief. *Id.*, docs. 57, 59, 69.

In his response to our order to show cause, Aranda described the factual basis for Batista's conviction and various district court proceedings that are irrelevant to the present matter, stated that he had been fired by Batista's family, and summarily asserted that Batista was not prejudiced. Response ¶¶ 12-13. Aranda did not address any of the conduct described in the preceding paragraph, or explain why Batista was not prejudiced by that conduct.

### F. *United States v. Espinal*, No. 12-737

Aranda represented Guidri Espinal in his appeal from a criminal judgment sentencing him to, *inter alia*, 41 months' imprisonment. Aranda failed to file a required form, despite being reminded to do so by the Court, and failed to file a brief, resulting in the dismissal of the appeal. In his response to our order to show cause, Aranda stated only that the appeal "was not pursued" because Espinal had been sentenced to the lowest sentence he

8

could have received within the stipulated Sentencing Guidelines range in his plea agreement, and that Espinal "was not prejudiced since he received a guidelines sentence." Response ¶¶ 14-15.

Aranda did not state whether Espinal had consented to the abandonment of the appeal. However, even if Espinal did consent, "an appellant's counsel of record who determines that the appeal will not proceed for any reason is required to inform the Court of the situation and seek to either withdraw the appeal or withdraw as counsel." *In re Yan*, 390 F. App'x 18, 21 (2d Cir. 2010). "[C]ounsel may not end the representation of a client without taking affirmative action, or permit the termination of an appeal by allowing its dismissal for lack of prosecution." *In re Payne*, 707 F.3d 195, 206 (2d Cir. 2013); *see also* Second Circuit Local Rule 4.1(a)-(d) (setting forth procedures for attorney's withdrawal from a criminal appeal).[2]

---

[2] If Espinal did not consent to the abandonment of the appeal, we would conclude that the loss of the appeal, regardless of its merit, caused him substantial prejudice for the reasons discussed in section II(A) of this decision.

## II. Misconduct in District Court

Our order to show cause also directed Aranda to explain his conduct in two district court cases, in which the presiding judges found his performance deficient in various respects.

As a preliminary matter, we observe that attorney misconduct in a district court is subject to the disciplinary authority of the judges of that court. This Court does not police the behavior of attorneys in the district courts.

Nonetheless, an attorney's conduct in district court may be the subject of proceedings in this Court in limited circumstances – for example: (a) in an appeal from a district court's disciplinary order, *see* Second Circuit Local Rule 46.3; (b) in a reciprocal disciplinary proceeding, in which this Court determines whether to impose reciprocal discipline based on a district court's suspension or disbarment order, *see* Second Circuit Local Rule 46.2(c); or (c) in a disciplinary proceeding concerning misconduct in this Court, where district court conduct is relevant to whether there is a pattern of misconduct or, more generally, to whether the attorney "will be unable to conform [his] future conduct [in this Court] to expected professional norms," *In re Jaffe*, 585 F.3d

118, 121 (2d Cir. 2009).[3] In the present disciplinary proceeding, Aranda's district court conduct is relevant because, when viewed in the context of the conduct described in our order to show cause, it supports the conclusions that his misconduct in this Court is part of a wider pattern of misconduct, and that he may be unable to conform to expected professional norms in future appeals in this Court.

**A.  *United States v. Sanchez*, No. 12-cr-131 (S.D.N.Y.)**

Aranda represented Patricio Sanchez in his criminal prosecution, which concluded with Sanchez pleading guilty and being sentenced to, *inter alia*, 37 months' imprisonment.  In post-judgment proceedings, the district court determined that Aranda had deprived Sanchez of effective assistance of counsel by failing to pursue a direct appeal, contrary to Sanchez's instructions. *See Sanchez v. United States*, Nos. 12-cr-131, 13-cv-6827, 2014 WL 764341, at *2 (S.D.N.Y. Feb. 25, 2014).

The district court also denied Aranda's motion to withdraw from the appeal – explaining that the motion was not properly addressed to that court –

---

[3] There may be other instances where an attorney's conduct in district court is relevant to a disciplinary proceeding in this Court.  The examples presented above are not intended as exclusive.

11

and stated that Aranda was required to proceed with the appeal until relieved by this Court. *See id.* The district court specified that, until this Court relieved Aranda of his duties, those duties "include filing an appeal on Mr. Sanchez's behalf and submitting an *Anders* brief if Mr. Aranda believes the appeal is frivolous."[4] *Id.* Despite these directives, there is no indication Aranda has attempted to proceed with the appeal.

In his response to our order to show cause, Aranda asserted, *inter alia*, that: Sanchez did not pay him for an appeal; Aranda could not proceed with an appeal due to a conflict of interest; he had requested that this Court relieve him from representing Sanchez on appeal, but has not yet received a ruling; Sanchez was not prejudiced, because he was sentenced within the range set forth in his plea agreement; and "this Court has ruled on his appeal." Response ¶¶ 17-18. Aranda's assertions are both factually and legally flawed.

First, an attorney representing a criminal defendant who is instructed by his client to file a notice of appeal must do so, even if the client waived the

---

[4] *See Anders v. California*, 386 U.S. 738 (1967) (requiring, in an appeal from a criminal judgment, that a defense attorney who believes that his client's appeal would be frivolous must, *inter alia*, move to be relieved on that basis and brief all arguably meritorious appellate issues).

right to appeal in a plea agreement. *See Campusano v. United States*, 442 F.3d 770, 771-72 (2d Cir. 2006). Aranda has never claimed that Sanchez did not instruct him to file an appeal; in fact, as discussed below, Aranda did attempt to file a notice of appeal.[5]

Second, after the defendant's notice of appeal is filed, the defendant's attorney is required to proceed with the appeal until explicitly relieved of the representation by this Court. *See* Second Circuit Local Rule 4.1(a) ("When a defendant in a criminal case seeks to appeal, defendant's counsel, whether retained or appointed, is responsible for representing the defendant unless relieved by this court."); *see also Payne*, 707 F.3d at 206 ("[C]ounsel may not end the representation of a client without taking affirmative action."). Thus, an attorney who has not been paid for the appeal, or who believes that the appeal would be frivolous, or who has a conflict of interest with his client, must nonetheless continue with the appeal until a proper motion to withdraw

---

[5] In the post-judgment proceedings noted above, the Government informed the district court that Aranda had orally confirmed "that he filed [the] notice of appeal because he was asked to do so by Sanchez." *Sanchez v. United States*, No. 13-cv-6827 (S.D.N.Y.), Feb. 14, 2014 docket entry (ECF No. 7; Government letter).

13

has been granted by this Court.[6]

Third, there is no record of Aranda moving in this Court to withdraw as counsel; in fact, until several days ago, there was no appeal in this Court. The reason is simple: Aranda filed a notice of appeal that was found defective by the district court's clerk's office. *See Sanchez*, No. 12-cr-131 (S.D.N.Y.), Dec. 11-12, 2012 docket entries (notice of appeal, with docket notations that the filing was defective). There is no indication that Aranda attempted to cure that defect and, as a result, the matter was not transferred to this Court at that time. In fact, over two years passed before a notice of appeal was properly filed, and that notice was filed by Sanchez himself.[7] *See id.*, May 11, 2015 docket entry (ECF No. 35).

The February 13, 2014 motion to withdraw that Aranda claims he filed

_____

[6] Aranda's assertion that Sanchez had retained another attorney in or about April 2013 is irrelevant, as there is no suggestion that Sanchez was represented by anyone other than Aranda during the period for filing the notice of appeal or that any other attorney sought to proceed with the appeal. In any event, as discussed above, Aranda remained responsible for the appeal until explicitly relieved.

[7] The district court judge stated that Aranda had filed a notice of appeal but failed to thereafter file an appellate brief. *See Sanchez*, Nos. 12-cr-131, 13-cv-6827, 2014 WL 764341, at *2. However, because of Aranda's defective notice of appeal, there was no appeal in which to file an appellate brief.

14

in this Court appears to have actually been filed in district court. A motion matching that description was filed in district court on February 14, 2014, *see id.*, Feb. 14, 2014 docket entry (ECF No. 31) , and, as noted above, was denied by the district court as having been filed in the wrong court, *see Sanchez*, 2014 WL 764341, at \*2. Although the district court made clear that the motion needed to be filed in this Court, there is no indication that Aranda ever investigated the status of the appeal. *See In re DeMarco*, 733 F.3d 457, 463 (2d Cir. 2013) ("Although counsel of record need not constantly monitor the Court's docket, counsel cannot allow lengthy periods of time to pass without periodic review.").

Aranda's conclusory assertion that this Court has ruled on Sanchez's appeal is baffling; the exhibit he cited in support of this assertion is merely a copy of Sanchez's plea agreement. *See* Response, exh. 4.

Finally, we reject Aranda's contention that, because Sanchez received a sentence consistent with his plea agreement, he was not prejudiced by Aranda's misconduct. Although the full extent of prejudice suffered by Sanchez cannot be determined without analyzing the issues he will present in his future appellate brief, his recent *pro se* notice of appeal reflects his wish to

15

challenge both his conviction and sentence. *See Sanchez*, No. 12-cr-131 (S.D.N.Y.), May 11, 2015 docket entry (ECF No. 35). However, because Sanchez is no longer incarcerated pursuant to the judgment under appeal, there is a substantial risk that his intended appeal of his sentence will be found moot, in whole or part, as a result of Aranda's delay.[8] That loss of the opportunity to appeal, by itself, constitutes significant prejudice.

In the context of an attorney who had failed to pursue an appeal from a deportation order, we stated that

> the dismissal of a case on default without the client's consent,
> even if the case appears to lack merit, causes prejudice by

---

[8] The web site for the Federal Bureau of Prisons indicates that Sanchez was released from its custody in February 2015; in a recent letter to the district court, Sanchez stated that he had completed his criminal sentence and had been transferred to immigration detention. *See Sanchez*, No. 12-cr-131 (S.D.N.Y.), Apr. 30, 2015 docket entry (ECF No. 34) at 2. As a result, it is questionable whether Sanchez is now able to effectively challenge his term of incarceration or his supervised release. *See United States v. Blackburn*, 461 F.3d 259, 262 (2d Cir. 2006) (holding that the defendant's sentencing appeal was moot because he had completed his term of incarceration and "the possibility of the district court's imposing a reduced term of supervised release on remand [was] remote and speculative"); *see also United States v. Williams*, 475 F.3d 468, 479 n. 6 (2d Cir. 2007) (stating that a sentencing appeal would be moot where the defendant had been released from prison and deported before completion of his supervised release, and his chance of legally returning to this country to serve the remainder of his supervised release was no more than "quixotic").

16

> depriving the client of review by a panel of Article III judges. Litigants who face deportation, incarceration, or simply a financial loss if they lose on appeal are likely to derive at least some satisfaction, consolation, or sense of finality from knowing that the loss on appeal resulted from the reasoned decision of three judges rather than from their attorneys' default.

*In re Fengling Liu*, 664 F.3d 367, 373 (2d Cir. 2011).

However, the concept of prejudice in the context of a criminal appeal is more fully developed in decisions discussing the Sixth Amendment right to effective assistance of counsel. Those decisions make clear that prejudice is presumed when a criminal defendant instructs his attorney to pursue a direct appeal from the judgment of conviction and the attorney fails to do so. *See Campusano*, 442 F.3d at 772. While that understanding of prejudice does not bear directly on an attorney disciplinary proceeding, the rationale for the presumption of prejudice is relevant. The Supreme Court has described the prejudice that results from an attorney's failure to appeal as follows:

> According to respondent, counsel's deficient performance deprived him of a notice of appeal and, hence, an appeal altogether. Assuming those allegations are true, counsel's deficient performance has deprived respondent of more than a *fair* judicial proceeding; that deficiency deprived respondent of the appellate proceeding altogether. In *Cronic, Penson*, and

17

*Robbins*,[9] we held that the complete denial of counsel during a critical stage of a judicial proceeding mandates a presumption of prejudice because "the adversary process itself" has been rendered "presumptively unreliable." *Cronic*, [466 U.S.] at 659. The even more serious denial of the entire judicial proceeding itself, which a defendant wanted at the time and to which he had a right, similarly demands a presumption of prejudice. Put simply, we cannot accord any "'presumption of reliability,'" *Robbins*, [528 U.S.] at 286, to judicial proceedings that never took place.

*Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000).

The prejudice calculus is not significantly altered by the fact that the defendant signed a plea agreement containing an appeal waiver. In that scenario, this Court has observed the following:

[T]he presumption of prejudice in post-waiver cases "is not a matter of formalistic compliance with a technical rule merely postponing the inevitable denial of relief on the merits. Rather, it serves to safeguard important interests with concrete and potentially dispositive consequences which can be guaranteed only by the direct-appeal process and the concomitant right to counsel." *United States v. Garrett*, 402 F.3d [1262,] 1265–66 [(10th Cir. 2005)] (internal citation, alteration and quotation marks omitted). An *Anders* brief at least makes available to the defendant the best possible arguments supporting his appeal or the reasons why counsel believes no such arguments exist. *See Anders* [*v. California*], 386 U.S. [738,] 745, 87 S.Ct. 1396 [(1967)]. Thus, if the defendant chooses to proceed *pro se*, he or she will do

9 *United States v. Cronic*, 466 U.S. 648 (1984); *Penson v. Ohio*, 488 U.S. 75 (1988); *Smith v. Robbins*, 528 U.S. 259 (2000).

18

so with as much advice and assistance as his or her attorney can ethically provide. When an *Anders* brief is filed and a court reviews the appeal to determine whether it raises non-frivolous issues, the defendant is afforded first an opportunity to appeal with the benefit of counsel and then an opportunity to demonstrate to the court the existence of non-frivolous issues after counsel has withdrawn. These are not trivial opportunities.

*Campusano*, 442 F.3d at 776-77.

For the reasons discussed in *Flores-Ortega*, *Campusano*, and *Fengling Liu*, we conclude that Sanchez suffered substantial prejudice from the delay of his appeal even if he received a sentence consistent with his plea agreement.

**B.  *Morillo v. City of New York*, No. 02-cv-8647 (S.D.N.Y.)**

Aranda represented Ramon Morillo in a civil action against the City of New York and several of its police officers. The district court dismissed the action in a decision that criticized Aranda's performance in several respects. *See Morillo v. City of New York*, No. 02-cv-8647, 2003 WL 22319609 (S.D.N.Y. Oct. 10, 2003). Although our order to show cause directed Aranda to explain his conduct in *Morillo*, he responded that he does not "feel competent to comment on that case" because his former partner has possession of the relevant files; he also suggested that the former partner may have been responsible for the case since it was their firm's practice to have that partner

19

"do all paper work and make most appearances in federal court."  Response ¶ 16.

The docket for *Morillo* lists Aranda as the sole counsel of record for the plaintiff, and the October 2003 district court decision discussed him by name.

Aranda did not state whether he had made any attempt to access the files for *Morillo* for purposes of responding to our order, and he did not request this Court's aid in obtaining them.  An attorney responding to disciplinary charges must make reasonable efforts to review all relevant records and other evidence; if relevant evidence is not accessible, the attorney must detail his or her efforts to obtain it and, if appropriate, request a subpoena or other help from this Court.  *See, e.g.*, Second Circuit Local Rule 46.2(b)(3)(F)(i) (permitting attorney in proceeding before this Court's Committee on Admissions and Grievances to request a subpoena from the Court for, *inter alia*, "the production of relevant documents or other evidence in the possession of third parties").

For present purposes, however, we will not require Aranda to supplement his response concerning *Morillo*, because we do not foresee any supplementation altering the disposition of this matter.  We reach no

20

conclusions concerning Aranda's conduct in that case.

**III. Prior Disciplinary History**

Our order to show cause also required Aranda to provide a complete description of his disciplinary history, copies of all prior orders to show cause why he should not be disciplined, copies of all of his responses to those orders, and copies of all prior decisions imposing disciplinary measures. In his response, Aranda discussed two instances when district court judges considered the possibility of sanctioning him, and one New York State disciplinary proceeding that resulted in a one-year suspension. However, he neglected to mention three admonitions imposed by New York State disciplinary authorities, and he failed to provide any of the required documents aside from the 2006 decision imposing the suspension.

For present purposes, we rely on the 2006 suspension decision for a description of the three admonitions. *See In re Aranda*, 32 A.D.3d 58 (1st Dep't 2006). In 1986, Aranda was admonished for making misrepresentations to a court about his engagement in another matter and to the departmental disciplinary committee; in 1989, he was admonished for neglecting a criminal matter; and, in 1993, he was admonished for failing to appear in court. *See id.*

21

at 62.

The 2006 suspension order was based on Aranda's neglect of several civil cases, which resulted in the loss of his clients' claims, and his failure to file retainer statements. *See id.* at 64-65. The one-year suspension was imposed despite the mitigating evidence presented by Aranda, which included his testimony that he had reorganized his office by obtaining a new computer system and had reduced his caseload by seventy-five percent. *Id.* at 62, 64.

**IV. Failure to Properly Respond to Our Order to Show Cause**

As discussed above, Aranda has failed to explain, or even mention, much of the questionable conduct described in our order to show cause, contrary to the explicit instructions in that order. We treat that failure as Aranda's admission that he did, in fact, engage in that conduct and that he lacked any legitimate excuse for it. *See* American Bar Association ("ABA"), *Model Rules for Lawyer Disciplinary Enforcement*, Rule 33(1) (1989, amended 2002) ("Failure to answer charges filed shall constitute an admission of the factual allegations."); *In re Christensen*, 69 A.D.3d 201, 202 (2d Dep't 2009) ("[H]aving failed to answer the charges of the petition, the respondent is in

22

default and the charges contained in the verified petition must be deemed established."); *In re Anello*, 228 A.D.2d 1, 2 (2d Dep't 1996) ("Inasmuch as the respondent has chosen not to appear or answer these proceedings, the charges must be deemed established.").

Aranda's failure to properly respond also constitutes both an independent basis for disciplinary action and an aggravating factor. *See In re Warburgh*, 644 F.3d 173, 176 (2d Cir. 2011) (holding that attorney's failure to respond to an order to show cause why he should not be disciplined, issued by this Court's Committee on Admissions and Grievances, may be treated as both an independent basis for disciplinary action and an aggravating factor); *see also* ABA, *Standards for Imposing Lawyer Sanctions* § 9.22(e) (1986, amended 1992); *In re Padilla*, 67 N.Y.2d 440, 448 (1986) (finding that attorney's obstructionism in disciplinary proceeding "frustrated the diligent pursuit of serious charges against him, placed into question his fitness to represent others, and itself constituted conduct prejudicial to the administration of justice").

In recent disciplinary decisions, we have held that an attorney's obstruction of a disciplinary proceeding, by failing to respond to an order to

show cause or by providing false testimony, was a significant aggravating factor. *See Warburgh*, 644 F.3d at 176–77; *Gordon*, 780 F.3d at 159-60. The observations we made concerning those forms of obstruction apply as well to Aranda's failure to fully respond to the order to show cause in the present case. In *Warburgh*, where the order to show cause was issued by this Court's Committee on Admissions and Grievances, we stated the following:

> An attorney's default in disciplinary proceedings is a serious breach of the attorney's professional obligations to the Court and the public. In such a case, the attorney has not only failed to respond to a Court-sanctioned order, but has done so after the Court already has found good cause to question the attorney's very competence to continue practicing in this Court. Furthermore, such defaults often seriously handicap the Committee and Court in their efforts to reach a fair determination based on a complete record, and usually result in waste of Committee and Court resources.

*Warburgh*, 644 F.3d at 176–77. Furthermore, as with the false testimony discussed in *Gordon*, an attorney's failure to address important aspects of an order to show cause in a disciplinary proceeding "also undermines the remedial purposes of [the] disciplinary proceeding—since a proper remedy depends on accurate information—and demonstrates that the attorney has not fully accepted responsibility and may remain unable to fulfill his obligations

24

as an officer of the Court." *Gordon*, 780 F.3d at 160.

In the present case, Aranda failed to address substantial portions of our order, concerning conduct that is central to this disciplinary inquiry. For purposes of this decision, we assume that Aranda did not deliberately do so. At the very least, however, his omissions reflect gross negligence, as our order clearly set forth what Aranda was required to address in his response. Thus, as in *Warburgh* and *Gordon*, we consider Aranda's omissions to be a significant aggravating factor.[10]

**V. Voluntary Remedial Measures**

In his response, Aranda stated that he is taking steps to ensure that his misconduct in this Court does not recur, including associating with more experienced attorneys, developing a chart of the steps necessary to perfect an appeal, and hiring more staff. *See* Response ¶ 23.

We give Aranda's assurances little weight. The present case is not Aranda's first wake-up call. The alarm has repeatedly sounded over the years

---

[10] Aranda also failed to fully comply with the directive in our order to provide, and update, a complete list of all cases in this Court in which he was counsel of record or performing legal services, as he failed to inform us of an appeal commenced after the filing of his response, *see United States v. Gonzalez (Diaz)*, No. 14-1878 (L).

25

– in 1986, 1989, 1993, 2006, and every time in the past several years that he received an order or telephone call from this Court requiring him to address his many defaults – but Aranda's conduct remained unchanged. The clearest sign of this pattern of misconduct is his current failure to address much, or most, of the misconduct described in our order to show cause.

## VI. Appropriate Disciplinary Measures

Aranda's case presents a number of aggravating factors and little assurance that he can conform his conduct to expected professional norms. We accord significant weight to: his prior disciplinary history, much of which also involved neglect of his clients' cases; the pattern of misconduct, involving multiple cases and covering a span of years; the fact that his defaults occurred in criminal appeals, where significant liberty interests were at risk; his continuing failure to take corrective action in Sanchez's case, despite it being clear for more than two years that no appeal had been opened; the substantial prejudice Aranda's defaults nearly caused Manigault; and his gross negligence in failing to properly respond to our order to show cause. After weighing all of Aranda's misconduct, and the significant aggravating factors, we conclude that Aranda should be publicly reprimanded and suspended

26

from practice before this Court for eighteen months.[11]

---

[11] *See In re Tustaniwsky*, 758 F.3d 179, 184-85 (2d Cir. 2014) (imposing one-year suspension, based on, *inter alia*: defaults in twenty-two immigration cases; deficient briefs in five cases; knowingly filing meritless pleadings; prejudice to at least two clients whose cases were dismissed on default; exposure of other clients to potential prejudice through defaults; lack of remorse; only partial acknowledgment of wrongdoing; and hostile attitude toward this Court's Committee on Admissions and Grievances); *In re Sobolevsky*, 430 F. App'x 9, 10-11 (2d Cir. 2011) (imposing two-year suspension, based on, *inter alia*: defaults in numerous immigration cases; extremely poor briefing in several cases; inaccurate statements about those cases in the disciplinary proceeding; filing of pleadings drafted by non-lawyers; and failure to respond to important findings in the report of this Court's Committee on Admissions and Grievances); *In re Kulcsar*, 417 F. App'x 15, 20 (2d Cir. 2011) (imposing six-month suspension, followed by one-year bar on representing litigants in this Court under the Criminal Justice Act ("CJA"), based on, *inter alia*: defaults in a number of criminal appeals, resulting in the dismissal of five of those appeals; failure to respond to numerous Court communications; violation of duty of diligence; and violation of CJA rules requiring counsel to continue representation until granted leave to withdraw and prohibiting delegation of tasks to non-employees); *In re Skyers*, 382 F. App'x 11, 12-13 (2d Cir. 2010) (imposing two-year bar on representing litigants in this Court under the CJA, based on, *inter alia*: defaults in two criminal appeals; failure to respond to multiple inquiries from the Court concerning those cases; failure to properly respond to the Court's order to show cause why he should not be disciplined; and significant reprimand history). *See also In re Hampden*, 11 A.D.3d 17, 19-20 (2d Dep't 2004) (imposing two-year suspension, based on: neglect of a criminal case; lengthy history of sanctions for prior identical conduct; and "prolonged and repeated pattern of failing to cooperate with the disciplinary authorities"); *In re Banagan*, 271 A.D.2d 748 (3d Dep't 2000) (imposing two-year suspension, based on: neglect of two criminal appeals; failure to cooperate with disciplinary committee; and prior disciplinary record); *In re Lenkiewicz*, 55 A.D.3d 251, 252-53 (4th Dep't 2008) (imposing seven-month suspension, based on: failure to respond to inquiries from a client in a criminal matter; failure to respond to, or comply

It is further ORDERED as follows:

(a)  The suspension period will commence twenty-eight days from the date of this decision.  Aranda may file any briefs that currently have filing deadlines falling within the next twenty-eight days, and may see through to completion any case in this Court in which his brief has been filed by the end of that twenty-eight day period.  However, any panel presiding over a case in which Aranda is representing a party is free to reconsider his continued representation.

(b) With respect to all of his other pending cases in this Court, Aranda must, within twenty-eight days: (i) inform his clients that, due to his suspension, they must obtain new counsel or proceed *pro se*, (ii) turn over all client files and materials to those clients, to the extent required by applicable laws and rules, (iii) cooperate in all other respects with his clients' efforts to prosecute their cases, and (iv) move to withdraw in each case in compliance with Local Rule 4.1 and any other applicable rules and, if appropriate, move for an extension of time to enable new counsel, or the client, to prepare for, and prosecute, the appeal.[12]

---

with, disciplinary committee communications; and previous censure for similar conduct).

[12]  Counsel to this panel is authorized to provide, upon request, all documents from the record of this proceeding to other attorney disciplinary authorities.  Although some of the documents in the record were treated as confidential by this Court, we of course leave to the discretion of those disciplinary authorities the decision of whether specific documents, or portions of documents, should be made available to any person or the public.

A supplemental order issued this date discusses, *inter alia*, the requirements for Aranda's disclosure of this decision and for his readmission to this Court's bar after his suspension period.