14-90028-am
In re Villanueva

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 1ˢᵗ day of December, two thousand fifteen.

PRESENT:
>        JOSÉ A. CABRANES,
>        ROBERT D. SACK,
>        RICHARD C. WESLEY,
>             *Circuit Judges.*

_____

| | |
|---|---|
| In re Gary S. Villanueva, | 14-90028-am |
| Attorney. | ORDER OF GRIEVANCE PANEL |

_____

Gary S. Villanueva was admitted to the New York State bar in 1984, and to this Court's bar in 1991.  By order filed in March 2015, we directed Villanueva to show cause why disciplinary or other

corrective measures should not be imposed on him pursuant to Federal Rules of Appellate Procedure 46(b) and (c) and Second Circuit Local Rule 46.2, based on his conduct in several appeals and one district court criminal proceeding. Contrary to our instruction, Villanueva failed to explain all of the conduct described in that order. *See In re Aranda*, 789 F.3d 48, 57 (2d Cir. 2015) (holding that a failure to properly respond to an order to show cause why discipline should not be imposed constitutes both an independent basis for disciplinary action and an aggravating factor). Based on the conduct discussed below, and Villanueva's failure to properly respond to our March 2015 order, we publicly reprimand Villanueva for his misconduct in this Court.[1]

The relevant conduct is detailed in the March 2015 order, which will be made public. In the present decision, we primarily focus on the conduct Villanueva failed to adequately explain.

---

[1] Villanueva's response to the March 2015 order was due by April 16, 2015, but was not filed until July 13, 2015. When asked about his overdue response by a Court employee, Villanueva stated that he had not seen the order at the time it was mailed to him in March 2015. Although Villanueva's written response to the order does not address the delay or request an extension of time, we *sua sponte* construe it as including such a request and grant it. For present purposes, we do not address whether Villanueva's delay constituted additional misconduct, as it would not alter the result.

2

**I.    *United States v. Berganza (Gomez-Lopez)*, Nos. 10-1868 (L), 10-4828 (Con)**

Villanueva represented Carlos Fernando Gomez-Lopez in his appeal from a judgment sentencing him to, *inter alia*, 120 months' imprisonment.[2] After the appeal was opened, Villanueva was contacted four times regarding his failure to file this Court's Form B, as required under Second Circuit Local Rule 12.2(a)(1).  After the first call, a default order was entered stating that the appeal would be dismissed unless the form was filed by a specified deadline.  *See Berganza*, No. 10-4828, doc. 5.  Villanueva did not comply; fortunately for his client, the appeal was not dismissed based on Villanueva's default.  After the fourth call, Villanueva moved for, and was granted, leave to withdraw as counsel, and new counsel was appointed to represent Gomez-Lopez.  *See id.*, doc. 14 (order).

In his response to our March 2015 order, Villanueva stated that, after learning of Gomez-Lopez's *pro se* notice of appeal, he "wrestled with concerns regarding [Gomez-Lopez's] potential exposure" to a higher sentence if his case were remanded by this Court; those concerns led to Villanueva's motion for the appointment of new

---

[2]  The district court dockets for the four cases discussed in sections I through IV of this decision reflect that Villanueva was appointed to represent his clients in those cases under the Criminal Justice Act.

counsel, to allow for an independent reevaluation of Gomez-Lopez's potential exposure, Villanueva's performance, and Gomez-Lopez's appeal waiver. Response at 12. He asserts that the delay in filing Form B did not prejudice Gomez-Lopez or any other person. *Id.*

Villanueva also addressed his Form B defaults in an introductory statement concerning all four appeals that are the subject of this disciplinary proceeding. He stated that the Form B defaults in the four appeals "represent inefficiencies in [his] law practice which [he has] taken steps to correct by engaging an administrative assistant experienced in federal appellate procedure." *Id.* at 11. He also stated that those defaults "do not represent archetypically unethical or unbecoming conduct" and did not prejudice his clients since the appeals were decided on their merits. *Id.*

Villanueva did not explain his failure to respond to the Court's first three telephone messages, which were left over a span of five weeks, or his failure to request either an extension of time to file the required form or a stay of the appeal while he evaluated the risk posed by the appeal. An attorney who is evaluating whether an appeal should proceed, or whether the attorney should continue his representation, cannot passively allow deadlines in the appeal to expire during that evaluation process. If the attorney has not yet decided to either withdraw as counsel or withdraw the appeal, he must

4

request an extension of any looming deadline, a stay of the appeal, or advice from the Court. "Simply ignoring the deadline . . . is not an option." *In re Payne*, 707 F.3d 195, 203-04 (2d Cir. 2013) (discussing attorney who permitted briefing deadlines to expire while awaiting stipulations to withdraw his clients' appeals); *see In re Yan*, 390 F. App'x 18, 20 (2d Cir. 2010) ("[I]f it is unclear whether a client wishes to proceed, an attorney may, depending on the circumstances, request: an extension of time to file his brief, a stay of the appeal, withdrawal as counsel, withdrawal of the appeal, or advice from the Court. [The attorney's] failure to take any of the preceding actions was a disservice to his clients, this Court, and the public.").

Villanueva also did not address the order threatening dismissal of the appeal if the missing form was not filed by the specified deadline, or his failure to meet that deadline, or the fact that he did not move to withdraw as counsel until five weeks after the order was filed and three weeks after the deadline. If the Court had dismissed the appeal on that deadline, as threatened, Villanueva's evaluation of the appeal would have been a moot exercise. Although Villanueva claimed that his clients were not prejudiced by his Form B defaults, he risked serious prejudice to Gomez-Lopez,

5

"specifically, the substantial risk that the appeal could have been dismissed." *Aranda*, 789 F.3d at 51.

## II. *United States v. Britton (Guerino)*, No. 12-49

Villanueva represented Joseph Guerino in his appeal from a judgment sentencing him to, *inter alia*, 44 years' imprisonment. Villanueva's defaults in *Britton* were similar to those in *Berganza*. He was contacted three times by Court personnel regarding his failure to file required forms and, on two occasions, default orders were entered threatening dismissal of the appeal if he did not file the missing forms. *See Britton*, No. 12-49, docs. 9, 17 (orders). When Villanueva did not respond to the second such order, the appeal was dismissed. *See id.*, doc. 20. However, the appeal was later reinstated, with new counsel assigned, after Guerino himself wrote to the Court stating that Villanueva had abandoned him and ceased communicating with him about the appeal. *See id.*, doc. 24 (*pro se* motion), doc. 28 (reinstatement order).

In his response to our March 2015 order, Villanueva stated that "the critical decisions regarding the Guerino appeal were rendered" while he was overwhelmed by three complicated criminal proceedings in district court and by his grief concerning personal losses in his life (which we discuss *infra*). Response at 14. He did not identify the "critical decisions," or specifically address: the unanswered

6

communications from the Court, the two orders threatening dismissal based on his defaults, the resulting default dismissal, or his client's assertion that Villanueva had abandoned him. Additionally, he did not make clear how the district court cases prevented him from responding to this Court's communications and orders; he provided the dates of various district court proceedings in late 2011 and early January 2012, *see id.* at 13-14, but this Court's first order threatening dismissal was filed on January 19, 2012, the unanswered Court communications were made in February 2012, the second order threatening dismissal was filed on February 24, 2012, and the dismissal was entered in March 2012, see *Britton*, No. 12-49, entries 9-12, 17, 20.

Although Villanueva did not mention the dismissal of the appeal based on his default, he did note that the conviction was ultimately affirmed by this Court and asserted that his client therefore suffered no prejudice. *See* Response at 14. That assertion is somewhat disingenuous, since it was the client himself, and not Villanueva, who requested reinstatement of the appeal. *See Britton*, No. 12-49, entry 24. In any event, there was no guarantee that the appeal would be reinstated after that dismissal and, therefore, Villanueva exposed his client to the risk of severe prejudice. *See In re Aranda*, 789 F.3d at 51; *In re DeMell*, 589 F.3d 569, 573 (2d

7

Cir. 2009) ("[A] reasonable attorney with thirty years' experience ... clearly would know that defaulting on a client's case leaves open the possibility of severe prejudice.").

**III. *United States v. Clarke (Phillips)*, No. 12-266**

Villanueva represented Glenroy Phillips in his appeal from a judgment sentencing him to, *inter alia*, 96 months' imprisonment. Phillips filed his own notice of appeal, stating in a letter to the Court that he had requested that Villanueva file a notice of appeal, but Villanueva had not done so. *See Clarke*, No. 12-266, doc. 1. As detailed in our March 2015 order, the docket reflects that Villanueva thereafter defaulted on several occasions, culminating in the dismissal of the appeal based on his failure to file a brief and appendix. *See id.*, doc. 32 (dismissal order); *see also* March 2015 Order at 2. Approximately five months after the default dismissal, Phillips filed a *pro se* motion to recall the mandate, which was forwarded to Villanueva. *See Clarke*, No. 12-266, doc. 34. Well over a year later, Villanueva moved to reinstate the appeal, stating that the dismissal had resulted from unspecified "overwhelming personal and professional obligations." *Id.*, doc. 35. The motion was deemed defective for failure to include a brief and appendix, and a deadline for curing the defect was set. *See id.*, doc. 36. Villanueva cured the defect approximately three months after the

8

deadline. *See id.*, doc. 42. The appeal was reinstated, and the judgment of conviction was affirmed.

In his response, Villanueva briefly described the district court proceedings, and disputed Phillips's assertion that he had requested Villanueva to file a notice of appeal. *See* Response at 15-16. Aside from the general remarks in his introduction concerning his Form B defaults in all four appeals, *see id.*, at 11, he did not address his defaults in *Clarke*, the dismissal of the appeal based on his default, his failure to request reinstatement until Phillips himself had requested that relief, or the risk of severe prejudice to Phillips.

**IV. *United States v. Prado (Guzman)*, No. 14-4707**

Villanueva represented Adalberto Ariel Guzman in his appeal from a judgment sentencing him to, *inter alia*, life imprisonment. After Villanueva defaulted on the filing of Form B, an order issued stating that the appeal would be dismissed if he failed to cure the default by January 20, 2015. *See Prado*, No. 14-4707, doc. 5. When Villanueva failed to comply, the Court left messages for him twice, in February and March 2015, requesting that he file Form B or a motion to be relieved as counsel. *See id.*, entries 9-10. On March 31, 2015 and April 2, 2015, respectively, Villanueva filed a motion to be relieved and Form B (although both were initially found defective).

9

*See id.*, docs. 11-17, 20-23. He was thereafter replaced by new counsel. *See id.*, doc. 26.

In Villanueva's response to our March 2015 order, he stated, *inter alia*, that his delay in moving to withdraw as counsel resulted from his sense of responsibility for Guzman, that the late filing of Form B "was inexcusable," and that no one was prejudiced by it. *See* Response at 16-17. He did not mention the order threatening dismissal, his failure to comply with the deadline provided in that order, the multiple communications that were required before he belatedly complied, or the fact that his response to that order was filed well over two months after its due date at which time the appeal was to be dismissed.[3]

---

[3] We also directed Villanueva to address his conduct in a district court criminal case, *United States v. Santiago*, No. 00-cr-237 (S.D.N.Y.), but we reach no conclusions concerning that conduct. His client in that case, Santiago, asserted that Villanueva had, *inter alia*, failed to request resentencing, as permitted by the terms of this Court's remand on direct appeal, and failed to communicate with Santiago. *See* March 2015 order at 3. In his response to our March 2015 order, Villanueva stated that he had determined that moving for resentencing for Santiago would be futile and that Santiago was aware of "the status of his sentence"; however, Villanueva did not state that he, himself, ever informed Santiago of his decision not to pursue resentencing, or specify how or when Santiago became aware of the "status" of his sentence. *See* Response at 19-21. While Villanueva's response leaves significant questions unanswered, we decline to inquire further because it is unlikely further information would alter the disposition of this proceeding.

10

**V.    Mitigating and Aggravating Factors**

In his response to the March 2015 order, Villanueva described personal and professional circumstances that we consider significant mitigating factors for some, but not all, of the relevant conduct. After the October 2009 death of his close friend and professional colleague, with whom he had shared an office and support staff, Villanueva assumed responsibility for his colleague's cases and the closing of the colleague's practice.  Additionally, without his colleague's financial contribution, he needed to relocate his office, which occurred in early 2010, and lacked consistent support staff for the next five years.  *See* Response at 2-3.

From January 2010 through August 2010, he also was responsible for the care of his terminally ill parents, spending a great deal of time doing such things as shopping, cooking, managing medications, and traveling to medical appointments.  *See id.* at 3-4.  His parents died in June and August 2010, respectively, and, during the "next year" (*i.e.*, through an unspecified date in 2011), his two next closest relatives also died.  *See id.* at 4.  Villanueva stated that his misconduct in *Berganza*, *Britton*, *Clarke*, and *Prado* "occurred or

However, other disciplinary committees are free to pursue the matter further.

11

commenced in the wake of these personal and professional tragedies" and, although "[r]eeling with shock and disbelief, [he] was unable to seek comfort or counseling." *Id.*

An attorney's culpability for misconduct may be mitigated if, during the relevant time period, the attorney was overwhelmed by the illnesses or other dire circumstances of close family and friends, or by grief, depression, shock, or other forms of mental trauma. We accept Villanueva's sworn statements concerning the time and effort required to care for his terminally ill parents and to wind down his close friend's law practice. The impact of his grief and shock is more difficult to gauge, because he did not explain with any specificity how they affected his practice or otherwise link them to his misconduct. However, for present purposes, we assume his grief and shock had a significant impact on his ability to meet his professional obligations during the time periods specified in his response, which extended through some part of 2011, and perhaps for a period thereafter.

Villanueva's misconduct in *Berganza* occurred in December 2010 and January 2011; in *Britton*, his misconduct began in January 2012 and extended through at least July 2012 (when his client's pro se motion for reinstatement of the appeal was forwarded to him) and arguably through October 2013 (when the appeal was *sua sponte* reinstated and

12

new counsel appointed); in *Clarke*, his misconduct occurred in January 2012 through early September 2014; and, in *Prado*, it occurred in early 2015. His failure to respond appropriately to our March 2015 order occurred this year. We do not wish to minimize the potential impact of grief and other forms of mental trauma, but Villanueva has not suggested that his grief and shock had any appreciable impact on his professional conduct in the later years in which his misconduct occurred. Thus, although we assume his grief and shock had a substantial impact in the early years, warranting a finding of mitigation, there is no evidence (or assertion) that they impacted the later years.[4]

We give little weight to Villanueva's statement that, in the five-year period after his colleague's October 2009 death, he lacked consistent support staff due to the loss of his colleague's financial contribution. If an attorney is financially unable to maintain a staff and other office resources commensurate with his caseload, he

---

[4] Due to the difficulty of assessing the impact of mental trauma on an attorney's professional obligations, attorneys are encouraged to provide as much detail as possible when raising that issue. Corroborating evidence, including sworn statements from medical or mental health professionals and others with personal knowledge of the impact, would be helpful. However, the need for corroborating evidence will differ from case to case.

is obligated to reduce that caseload or find some other means to ensure his clients are not prejudiced.

Villanueva's failure to explain, or even mention, much of the questionable conduct described in our March 2015 order, contrary to our explicit instruction, constitutes an admission that he did, in fact, engage in that conduct and lacked any legitimate excuse for it. *See Aranda*, 789 F.3d at 57. Additionally, since he failed to address conduct that is central to this disciplinary inquiry, that failure is considered a significant aggravating factor, even if it was not intentional. *Id.* at 58.

Finally, the fact that his misconduct occurred in criminal appeals, where important liberty interests were at stake, is also a significant aggravating factor. *Id.* at 59.

**VI. Conclusion**

Upon due consideration of Villanueva's misconduct in *Berganza*, *Britton*, *Clarke*, and *Prado*, and his failure to properly respond to our March 2015 order, it is hereby ordered that Villanueva is publicly reprimanded for his misconduct in this Court.

The Clerk of Court is directed to release this decision to the public by posting it on this Court's web site and providing copies to the public in the same manner as all other unpublished decisions of this Court, and to serve a copy on Villanueva, the attorney

14

disciplinary committees for the New York State Appellate Division, First Department, and the United States District Courts for the Eastern and Southern Districts of New York, and all other courts and jurisdictions to which this Court distributes disciplinary decisions in the ordinary course.[5]

                                    FOR THE COURT:
                                    Catherine O'Hagan Wolfe, Clerk

---

[5] Counsel to this panel is authorized to provide, upon request, all documents from the record of this proceeding to other attorney disciplinary authorities.  While we request that those documents remain confidential to the extent circumstances allow, we of course leave to the discretion of those disciplinary authorities the decision of whether specific documents, or portions of documents, should be made available to any person or the public.

15