OPINION OF THE COURT
Per Curiam.
Respondent Gary S. Villanueva was admitted to the practice of law in the State of New York by the First Judicial Department on June 18, 1984. Respondent maintains an office for the practice of law within the First Department.
By order and opinion of December 1, 2015, the United States Court of Appeals for the Second Circuit publicly reprimanded respondent based on his defaults in four criminal appeals (633 Fed Appx 1 [2d Cir 2015]).
By notice of petition dated August 8, 2016, the Departmental Disciplinary Committee moves, pursuant to Rules of the Appellate Division, First Department (22 NYCRR) § 603.3, for an order imposing reciprocal discipline upon respondent in the form of a public censure, the equivalent of a public reprimand in the Second Circuit, or, in the alternative, imposing whatever sanction this Court deems appropriate. Respondent, pro se, consents to the imposition of reciprocal discipline but requests that it be no greater than a public censure.
By order of March 19, 2015, the Second Circuit’s Grievance Panel directed respondent to show cause why disciplinary or other corrective measures should not be imposed on him based on his defaults in four criminal appeals. Respondent submitted an untimely response, which the court accepted, in which he asserted that his defaults were attributable to, inter alia, personal and professional tragedies, namely, in 2009, the attorney with whom he shared office space and professional expenses suffered a fatal heart attack which resulted in financial and administrative strain in that he was forced to, among other things, close out his friend’s law practice, lay off support staff, and relocate his law office; in 2010, he was preoccupied with his parents’ medical care, both of whom were seriously ill and later died in rapid succession, leaving him grief stricken; and in the midst of his grief over his parents’ deaths his closest surviving relatives, an aunt and uncle, both died.
Respondent admitted to a lack of “administrative diligence” on his part but averred that his grief has become more manageable with the passage of time; and he has implemented reforms to his law practice which included hiring an assistant experienced in federal appellate procedure. Respondent did not request a hearing pursuant to Second Circuit Local Rule 46.2 (b) (3) (D).
*75 In the first case, respondent represented defendant Gomez-Lopez in his appeal from a judgment sentencing him to, inter alia, 120 months’ imprisonment.* After Gomez-Lopez filed a pro se notice of appeal, respondent was contacted four times by the court regarding his failure to file a Form B (a criminal appeal transcript information form), as required by its local rules. After the first call, a default order was entered threatening dismissal unless the Form B was filed by the deadline specified therein. Although respondent did not comply, Gomez-Lopez’ appeal was not dismissed. After the fourth call from court personnel, upon respondent’s motion, new counsel was appointed to represent Gomez-Lopez.
Respondent explained that he was concerned that Gomez-Lopez’ appeal could possibly expose him to a higher sentence; thus, after consideration, he filed a motion to withdraw so that new counsel could fully examine the potential risks of an appeal and the effectiveness of his representation. He admitted that he did not file a Form B, as required, but stated that his delay in moving to withdraw did not prejudice Gomez-Lopez. Ultimately, Gomez-Lopez withdrew his appeal and has not pursued postconviction relief based on respondent’s performance.
The court found respondent’s response deficient in that he did not explain his failure to respond to three telephone messages from court personnel, nor his failure to request either an extension of time to file a Form B or a stay of Gomez-Lopez’ appeal while he examined its potential risks. In addition, respondent did not address the court’s default order threatening dismissal of the appeal, nor the fact that he did not move to withdraw until three weeks after the deadline for filing a Form B had passed. The court opined that respondent’s defaults and dilatory conduct potentially prejudiced Gomez-Lopez in that his appeal could have been dismissed.
In the second case, respondent represented defendant Guerino in his appeal from a judgment sentencing him to, inter alia, 44 years’ imprisonment. As in the Gomez-Lopez case, respondent failed to file a Form B; on three occasions he failed to respond to communications from court personnel regarding his failure to file required forms; two default orders were entered threatening dismissal if he did not file the missing *76 forms; and. the appeal was dismissed based on his default. The appeal was later reinstated, and new counsel assigned, but only after Guerino wrote to the court and complained about respondent’s representation.
As to defendant Guerino, respondent explained that his decision making was adversely affected by his family issues and the fact that he was overwhelmed by three other criminal trials; and as Guerino’s conviction was affirmed he was not prejudiced by the defaults. The court found respondent’s response deficient in that he did not specifically address, inter alia, his failure to respond to court personnel; the fact his defaults resulted in dismissal of the appeal; Guerino’s complaints as to his representation; or how his other professional commitments prevented communication with the court and compliance with its orders. The court found respondent’s assertion that Guerino was not prejudiced by his defaults to be disingenuous, given that it was Guerino, not respondent, who requested reinstatement of the appeal.
In the third case, respondent represented defendant Phillips in his appeal from a judgment sentencing him to, inter alia, 96 months’ imprisonment. Phillips filed his own notice of appeal because respondent purportedly failed to do so, despite being so instructed. Thereafter, respondent defaulted several times which resulted in dismissal of Phillips’ appeal. Phillips filed a pro se motion requesting that the court recall its dismissal order, but it was not until a year later that respondent filed a motion to reinstate the appeal. Respondent asserted in his motion papers that the dismissal had resulted from his “overwhelming personal and professional obligations.” The motion was deemed defective for failure to include a brief and appendix, and the court set a deadline for the defect to be cured. Respondent cured the defect three months after the deadline. Phillips’ appeal was reinstated and his conviction was affirmed.
In his response, respondent stated that he had been under the impression that Phillips did not want to pursue a “risky” appeal. He denied that Phillips had instructed him to file a notice of appeal, and he stated that he did not move to withdraw because he would have been forced to reveal Phillips’ purported misrepresentations to the court regarding his wish to appeal.
The court found that respondent’s response did not address his defaults in Phillips’ case and the dismissal resulting therefrom, nor the fact that he only moved to reinstate the ap *77 peal after Phillips requested such relief, or the potential prejudice to Phillips.
In the fourth and final case, respondent represented defendant Guzman in his appeal from a judgment sentencing him to, inter alia, life imprisonment. After respondent defaulted by failing to file a Form B, the court issued an order threatening dismissal of the appeal if respondent failed to cure the defect by a specified deadline. Respondent failed to do so. In addition, respondent failed to respond to the court’s messages in which it requested that he file a Form B or move to withdraw. Respondent belatedly filed a motion to withdraw and the Form B, both of which were initially found defective. Thereafter, respondent was replaced by new counsel.
Respondent explained that his delay in moving to withdraw resulted from his sense of responsibility for Guzman. He stated that his late filing of a Form B “was inexcusable” but that no one was prejudiced by it, as new counsel proceeded with the appeal. The court found that respondent did not address the default order threatening dismissal, nor his failure to comply with the deadline in that order. Additionally, according to the court, respondent did not explain why multiple communications from the court were required before he belatedly complied with its order.
The court concluded that respondent’s repeated defaults and dilatory conduct constituted misconduct. On the issue of sanction, the court found that his misconduct was mitigated by his family issues; but this mitigation did not cover the entire five-year period (2010-2015) over which his misconduct occurred. The court discounted the law office management issues respondent faced in the wake of his office mate’s death in late 2009 as mitigation because he should have either reduced his caseload or taken other appropriate steps to prevent prejudice to his clients. The court also found there was aggravation based upon inter alia, respondent’s failure to explain or mention much of the questionable conduct stemming from its March 2015 order and the fact that his misconduct occurred in criminal appeals where important liberty interests were at stake.
Respondent does not assert a defense to reciprocal discipline under 22 NYCRR 603.3 (c), and none apply. The only defenses to reciprocal discipline are: a lack of notice and opportunity to be heard in the foreign jurisdiction; an infirmity of proof establishing the misconduct; or the misconduct at issue in the foreign jurisdiction would not constitute misconduct in New York (Matter of Hoffman, 34 AD3d 1 [1st Dept 2006]).
*78 Respondent received notice of the misconduct allegations at issue in the Grievance Panel’s order to show cause and he submitted a response which the Grievance Panel considered. Further, the Grievance Panel’s misconduct findings are sufficiently supported by the record, which includes respondent’s admissions. Finally, respondent’s misconduct before the Second Circuit also constitutes misconduct under New York Rules of Professional Conduct (22 NYCRR 1200.0), namely, rules 1.3 (a) (failure to act with reasonable diligence and promptness in representing a client) and (b) (neglect) and 8.4 (d) (conduct prejudicial to the administration of justice) and (h) (overall conduct which adversely reflects on fitness as a lawyer).
Respondent consents to the imposition of reciprocal discipline, but he requests that it be no greater than a public censure. In reply, the Committee reiterates its position that public censure is appropriate.
As a general rule in reciprocal disciplinary matters, this Court gives significant weight to the sanction imposed by the jurisdiction in which the charges were initially brought (see Matter of Peters, 127 AD3d 103, 109 [1st Dept 2015]; Matter of Cardillo, 123 AD3d 147, 150 [1st Dept 2014]). Only in rare instances will this Court depart from its general rule (see Matter of Kim, 138 AD3d 8 [1st Dept 2016]; Matter of Lowell, 14 AD3d 41 [1st Dept 2004], appeal dismissed 4 NY3d 846 [2005], Iv denied 5 NY3d 708 [2005]).
Here, a public censure, the equivalent of a public reprimand in the Second Circuit, is in accord with this Court’s precedent involving similar misconduct (see e.g. Matter of Vialet, 120 AD3d 91 [1st Dept 2014]; Matter of Rudrakumaran, 113 AD3d 107 [1st Dept 2013]; Matter of Liu, 113 AD3d 85 [1st Dept 2013]).
Accordingly, the Departmental Disciplinary Committee’s petition for reciprocal discipline should be granted and respondent publicly censured.
Tom, J.R, Sweeny, Andrias, Webber and Gesmer, JJ., concur.
Respondent publicly censured.

 Respondent served as court appointed defense counsel in all four appeals.