11-90055-am

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2014
(Decided: March 10,  2015)

Docket No. 11-90055-am

_____

In re Peter S. Gordon,

*Attorney*.

_____

Before:              CABRANES, SACK, and WESLEY, *Circuit Judges*.

—————————————

This Court's Committee on Admissions and Grievances has recommended that Peter S. Gordon be disciplined for his misconduct in this Court.  We adopt the Committee's findings of fact and recommendations, with certain exceptions, publicly reprimand Gordon, and suspend him from practice before this Court for two months.

—————————————

For Peter S. Gordon:              Pery D. Krinsky, Krinsky, PLLC,
                                  New York, New York.

**PER CURIAM:**

Pursuant to this Court's rules governing attorney discipline, it is hereby

**ORDERED, ADJUDGED, AND DECREED** that the findings and

recommendations of this Court's Committee on Admissions and Grievances (the

"Committee") are adopted, except as discussed below, and Peter S. Gordon is

**PUBLICLY REPRIMANDED**, and **SUSPENDED** from practice before this Court

for two months, for engaging in misconduct in this Court.[1]

**I.  Summary of Proceedings**

We referred Gordon to the Committee for investigation of his conduct in

this Court and for preparation of a report on whether he should be subject to

disciplinary or other corrective measures.  The referral was based primarily on

Gordon's defaults in a number of appeals and his filing of motions that were not

authorized by any rule of appellate procedure.  During the Committee's

proceedings, Gordon had the opportunity to address the matters discussed in our

referral order and to testify under oath at a hearing held before Committee

members Terrence M. Connors, Kim A. Knox, and the Honorable Howard A.

Levine.  Gordon was represented at the hearing by Pery Krinsky.  Thereafter, the

_____

[1] Gordon was admitted to the New York State bar in 1989 and to this Court's bar in 2008.

2

Committee filed with the Court the record of the Committee's proceedings and its report and recommendations, as well as the minority report of Committee member Gerald Walpin. Gordon responded to the Committee's reports.

**A. The Committee's Findings and Recommendations**

The Committee found clear and convincing evidence that Gordon had engaged in misconduct warranting the imposition of discipline. *See* Majority Report at 12. Specifically, the Committee found that Gordon had (a) filed a number of nearly identical "summary judgment" motions in at least nine cases in this Court that were not authorized by any rule of appellate procedure; (b) failed comply with an April 2011 order directing him to either withdraw the summary judgment motions or explain their legal basis; (c) failed in seventeen cases to file scheduling notification letters, in violation of the Court's rules; (d) failed in eleven cases to comply with deadlines imposed by the Court, resulting in the dismissal of two cases; and (e) failed to oppose the Government's motion for summary affirmance in at least one case. *Id.* at 6-9.

The Committee also found that Gordon's explanations for his failure to comply with the April 2011 order were "inconsistent, disingenuous, and lacking in credibility," and that his lack of candor during the Committee's hearing violated

3

New York Rule of Professional Conduct 3.3(a)(1), which prohibits a lawyer from knowingly making "a false statement of fact . . . to a tribunal or fail[ing] to correct a false statement of material fact . . . previously made to the tribunal by the lawyer." *See id.* at 7-8.

After considering several mitigating and aggravating factors, *id.* at 9-11, the Committee recommended that Gordon be publicly reprimanded and required to attend continuing legal education ("CLE") classes in appellate immigration law, *id.* at 12. In his minority report, Committee member Walpin concurred with the majority in large part, but dissented from several findings bearing on credibility, aggravation, and mitigation, and recommended a suspension of at least nine months. *See* Minority Report.

**B. Gordon's Response to the Committee's Reports**

In his response to the Committee's reports, Gordon urged this Court to adopt the majority's recommendation of public reprimand and to reject the views expressed in the minority report. *See* Response to Report. Among other things, Gordon stated that a reprimand, rather than a suspension, was warranted in light of the mitigating factors present in his case, including his full cooperation with the Committee after he retained ethics counsel. *See id.* at 7-9.

4

## II. Discussion

We give "particular deference" to the factual findings of the Committee members who presided over an attorney-disciplinary hearing where those findings are based on demeanor-based credibility determinations, and "somewhat lesser deference" to credibility findings based on an analysis of a witness's testimony. *See In re Payne*, 707 F.3d 195, 201 (2d Cir. 2013) (internal quotation marks omitted). The Committee members who preside over a hearing are "in the best position to evaluate a witness's demeanor and tone of voice as well as other mannerisms that bear heavily on one's belief in what the witness says." *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 634 (2d Cir. 1996) (discussing trial judge's credibility findings).

In general, credibility determinations will not be overruled unless they are clearly erroneous. *See, e.g.*, *United States v. Yousef*, 327 F.3d 56, 124 (2d Cir. 2003) (appeal from criminal conviction); *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 435 (2d Cir. 2001) (appeal in civil action). A determination is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Murphy*, 703 F.3d 182, 188 (2d Cir. 2012) (internal

quotation marks and citation omitted). However, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* (internal quotation marks and citation omitted).

Upon due consideration of the Committee's majority and minority reports, the underlying record, and Gordon's response, we adopt the findings and recommendations of the Committee majority, except as discussed below.

**A. The Default Dismissal in *Pugach v. M&T Mortgage Corp.*, 08-3148**

One of the appeals dismissed as a result of Gordon's defaults was *Pugach v. M&T Mortgage Corp.*, 08-3148. In its report, the Committee seemed to conclude that the dismissal of that appeal likely caused little or no prejudice to Gordon's clients when it stated the following:

> According to [the Court's order referring Gordon to the Committee], it appears that, in [*Pugach*], the client proceeded *pro se*, which would suggest that the dismissal was not a final disposition of the matter.

Majority Report at 10. This statement requires clarification. First, the Court's referral order stated that, "[a]lthough it appears that one appellant in *Pugach* proceeded *pro se*, Gordon was the attorney of record for the other appellants." Referral Order at 3. The statement from the referral order is supported by the docket, which clearly reflects that one of the *Pugach* appellants proceeded *pro se*,

6

and that the other three appellants were represented by Gordon, who never withdrew from that representation. Second, it is not clear why a "client proceed[ing] *pro se*" suggests that the dismissal was not a final disposition and, in any event, the appeal clearly ended as to all parties once it was dismissed based on the default.

Additionally, the Committee did not comment on Gordon's reason for permitting *Pugach* to be dismissed on default, which bears on both the type of misconduct at issue and the type of resulting prejudice. The appeal was dismissed by default on October 21, 2008. The district court record indicates, however, that the parties had stipulated to a settlement as early as October 9, 2008, and that they requested the district court to so-order the settlement on October 28, 2008. *See Pugach v. M&T Mortgage Corp.*, 05-cv-2498, ECF No. 107 & attached notarized acknowledgment form (E.D.N.Y. motion filed Oct. 28, 2008). This timing suggests that the *Pugach* appellants, including Gordon's clients, permitted the appeal to be dismissed by default as a result of the settlement. It is well established, however, that "counsel may not end the representation of a client without taking affirmative action, or permit the termination of an appeal by allowing its dismissal for lack of prosecution." *Payne*, 707 F.3d at 206. Although Gordon's clients in *Pugach* were

not prejudiced by that default, Gordon's defaults in *Pugach* and in his other appeals caused prejudice of a different type: he wasted the time of opposing counsel, Court employees, and judges; delayed the processing of other litigants' cases; and caused unnecessary expense to the public.

**B. Other Defaults**

In a number of other cases, Gordon failed to file his briefs or required forms within the deadlines set by the Court, but was granted leave to file those papers out of time. However, as an experienced attorney, Gordon should not have assumed that the extensions of time would be granted. Despite the Court's forbearance in those situations, dismissal of the appeals based on Gordon's defaults was a distinct possibility (particularly where there had been a pattern of defaults) and, therefore, he exposed his clients to potentially serious prejudice. *See In re DeMell*, 589 F.3d 569, 573 (2d Cir. 2009) ("[A] reasonable attorney with thirty years experience . . . clearly would know that defaulting on a client's case leaves open the possibility of severe prejudice . . . ."); *see also United States v. Raimondi*, 760 F.2d 460, 462 (2d Cir. 1985) ("The lawyer who assumes this Court will relieve him of an onerous but manageable deadline . . . does so at his own peril.") (Kaufman, J.).

**C. Lack of Candor During the Committee's Hearing**

Making a false statement of material fact to the Committee obstructs the Committee's work.[2] In the context of a comparable type of obstruction, an attorney's failure to respond to the Committee's order to show cause why he should not be disciplined, we stated the following:

> An attorney's default in disciplinary proceedings is a serious breach of the attorney's professional obligations to the Court and the public. In such a case, the attorney has not only failed to respond to a Court-sanctioned order, but has done so after the Court already has found good cause to question the attorney's very competence to continue practicing in this Court. Furthermore, such defaults often seriously handicap the Committee and Court in their efforts to reach a fair determination based on a complete record, and usually result in waste of Committee and Court resources.

---

[2] New York Rule of Professional Conduct 3.3(a)(1) prohibits a lawyer from knowingly making "a false statement of fact . . . to a tribunal," and Rule 3.3(a)(3) prohibits a lawyer from "offer[ing] or us[ing] evidence that the lawyer knows to be false." As written, neither rule requires that the false fact or evidence be material, which is consistent with the legislative history of ABA Model Rule 3.3(a)(1), which preceded and is identical to the New York rule, and which indicates that the word "material" was intentionally deleted from that portion of the rule to conform with Model Rule 3.3(a)(3). *See* American Bar Ass'n, *A Legislative History: The Development of the ABA Model Rules of Professional Conduct, 1982-2005*, 454 (2006). For present purposes, we need not decide whether a false statement of fact made to this Court's Committee must be material before it is treated as an aggravating factor, because Gordon's false statements were material to this proceeding. We further note that the Committee is a "tribunal" within the meaning of Rule 3.3. *See* New York Rule of Professional Conduct 1.0(w) (stating that, for purposes of the Rules of Professional Conduct , "tribunal" includes an "administrative agency or other body acting in an adjudicative capacity").

*In re Warburgh*, 644 F.3d 173, 176-77 (2d Cir. 2011).  Providing false testimony also undermines the remedial purposes of a disciplinary proceeding—since a proper remedy depends on accurate information—and demonstrates that the attorney has not fully accepted responsibility and may remain unable to fulfill his obligations as an officer of the Court.  It is therefore a significant aggravating factor.

In his response to the Committee's report, Gordon did not address the Committee's finding that his testimony and written representations about the April 2011 order were "inconsistent, disingenuous, and lacking in credibility," or its conclusion that his lack of candor violated the Rule 3.3(a)(1) prohibition against knowingly making a false statement of fact.  Gordon merely stated that he "fully cooperated with the Committee's investigation."  Response at  8.  Because this conclusory assertion does not address the factual underpinning of the Committee's finding, or the Committee's legal determination, the issue can be treated as waived.  *Warburgh*, 644 F.3d at 176; *Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal quotation marks and citation omitted)).  In any event, we conclude that the Committee's credibility determination is supported by the

10

record and is not clearly erroneous. *See, e.g.*, Hearing Tr. (Record, Tab A) at 68-70, 91-95, 142-47.

### D. Appropriate Disciplinary Measures

Gordon's lack of candor regarding the April 2011 order is not explicitly mentioned in the Committee's discussion of aggravating factors or its weighing of the factors supporting its recommendation that Gordon be publicly reprimanded. *See* Committee Report at 11-12. Thus, it is not clear what weight the Committee gave to that lack of candor. Additionally, the Committee did not have the benefit of this Court's views on the issue. We now hold that an attorney's lack of candor during the Committee's proceedings generally should be accorded significant weight and conclude that, in the present case, a period of suspension is required.[3]

Aside from Gordon's lack of candor, the Committee's recommendation that he be publicly reprimanded is supported by the record and our prior decisions. But the duty of candor is so basic, and so important to proceedings before the Court and Committee, that the possibility of suspension should be considered in

---

[3] As noted *supra* note 2, we need not decide whether an attorney's lack of candor must pertain to a material fact because, in this case, Gordon's lack of candor was material to the proceeding.

every case involving violation of that duty.[4]  Here, however, the lack of candor was not especially egregious: it concerned only one of several issues before the Committee; it was not part of a pattern; the underlying conduct (the failure to comply with the April 2011 order), by itself, would likely warrant no more than a reprimand; and the lack of candor did not seriously disrupt the Committee's proceedings or cause any other serious prejudice.  Thus, after weighing all of Gordon's misconduct, and the mitigating and aggravating factors (including his lack of candor), we conclude that a suspension of two months should be imposed. *Compare In re Rosenblatt*, 253 A.D.2d 106, 108-09 (1st Dep't 1999) (imposing six-month suspension for threatening a business associate with physical harm and for the attorney's lack of candor with an assistant district attorney and the disciplinary committee; finding lack of candor to be "a serious aggravating factor"), *with In re Koop*, 219 A.D.2d 359, 360-61 (2d Dep't 1996) (after noting mitigating factors, imposing public censure for neglecting a legal matter, misleading the client, and

---

[4]  The American Bar Association's *Standards for Imposing Lawyer Sanctions* provides that, "[a]bsent aggravating or mitigating circumstances, . . . [s]uspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding."  ABA, *Standards for Imposing Lawyer Sanctions* § 6.12 (1986, amended 1992).

12

providing a false and misleading written response and testimony to the disciplinary committee).[5]

**III. Conclusions**

Upon due consideration of the Committee's reports, the underlying record, Gordon's submissions, and the matters discussed above, it is hereby ordered that Gordon is publicly reprimanded and suspended from practice before this Court for two months. The suspension period will commence upon the filing of this order.[6]

---

[5] *Also compare In re Orseck*, 81 A.D.2d 962, 962-63 (3d Dep't 1981) (imposing six-month suspension for neglecting a legal matter, misleading client about case status, and making false statements to disciplinary committee), *In re Carlisi*, 58 A.D.2d 508, 509 (2d Dep't 1977) (imposing six-month suspension for converting escrowed money, which was later returned, and making false statements to disciplinary counsel at least twice), *and In re Cohen*, 47 A.D.2d 357, 358 (1st Dep't 1975) (imposing three-month suspension for failing to file client's case within statutory period and making false statements about that conduct to disciplinary counsel), *with In re Axelrod*, 225 A.D.2d 191, 192 (4th Dep't 1996) (after noting mitigating factors, imposing public censure for neglecting legal matters, and making misrepresentations in a court document, to clients, and to the disciplinary committee), *and In re Jennings*, 46 A.D.2d 932, 932-33 (3d Dep't 1974) (after noting mitigating factors, imposing public censure for, inter alia, neglecting legal matters, misleading a client, giving conflicting testimony concerning alleged misconduct, and not cooperating with the disciplinary committee's investigation).

[6] It is our understanding that Gordon does not have any cases currently pending in this Court. If this is incorrect, or if he is now in the process of bringing any new appeals, he is directed to file, within 28 days of the date of this

The Clerk of Court is directed to release this decision to the public by posting it on this Court's web site and providing copies to the public in the same manner as all other published decisions of this Court, and to serve a copy on Gordon, this Court's Committee on Admissions and Grievances, the attorney disciplinary committee for the New York State Appellate Division, Second Department, and all other courts and jurisdictions to which this Court distributes disciplinary decisions in the ordinary course.[7]

decision, motions to withdraw from any such appeals. Any request to modify this deadline must be made to this panel.

[7] The Committee's reports are to be available to the public. Additionally, counsel to this panel is authorized to provide, upon request, all other documents from the record of this proceeding to other attorney disciplinary authorities. While we request that those other documents remain confidential to the extent circumstances allow, we of course leave to the discretion of those disciplinary authorities the decision of whether specific documents, or portions of documents, should be made available to any person or the public.

A supplemental order issued this date discusses Gordon's disclosure and CLE requirements, and his readmission to this Court's bar after his suspension period.