18-90003-am
In re D'Amico

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of April, two thousand eighteen.

PRESENT:
> JOSÉ A. CABRANES,
> ROBERT D. SACK,
> RICHARD C. WESLEY,
> *Circuit Judges.*

---

In re MICHAEL LAURENCE D'AMICO,                    18-90003-am

*Attorney.*                    ORDER OF
                    GRIEVANCE PANEL

---

By order filed in January 2018, Michael Laurence D'Amico was ordered to show cause why disciplinary or other corrective measures should not be imposed on him pursuant to Federal Rules of Appellate Procedure 46(b) and (c) and Second Circuit Local Rule 46.2, primarily based on his defaults in two criminal appeals in this Court, *United States v. Caliz*, 13-4755, and *United States v. Nance*, 14-254.

In *Caliz*, D'Amico represented defendant-appellant Alexi Caliz in his appeal from a December 2013 criminal judgment sentencing him to, inter alia, five years' imprisonment and four years' supervised release, *see Caliz*, 13-4755, doc. 2 (judgment of conviction); in *Nance*, D'Amico represented defendant-appellant Tyrone Nance in his appeal from a January 2014 criminal judgment sentencing him to, inter alia, three years' imprisonment and one year's supervised release, *see Nance*, 14-254, doc. 2 (judgment of conviction).

D'Amico also was directed to explain his conduct in *Gonzalez v. Lape*, 11-2649, in which he represented Leonard Gonzalez in his appeal from the denial of his 28 U.S.C. § 2254 petition challenging a New York State conviction. That appeal was dismissed based on D'Amico's failure to file a motion for a certificate of appealability. *Gonzalez v. Lape*, 11-2649, doc. 5 (order stating that appeal would be dismissed if motion was not filed by specified date), entry 9 (noting dismissal).

The portions of the January 2018 order detailing D'Amico's defaults in the three appeals can be found in the appendix to this order.

D'Amico was admitted to the bar of this Court in 2016; the New York State attorney registration website states that he was admitted to the New York bar in 1999.[1]

## I. D'Amico's Response to the January 2018 Order

Regarding both *Caliz* and *Nance*, D'Amico states that: he represented both clients in their district court proceedings; after their convictions, neither client expressed an interest in an appeal; and

---

[1] The New York State attorney registration website includes another attorney with the name "Michael L. D'Amico." According to this Court's records (and D'Amico's response to the January 2018 order), the attorney who is the subject of the present proceeding has a business address of 300 Main Street, Buffalo, New York 14202, telephone number 716-854-1300, and email addresses mldamicolaw@gmail.com and/or mldamico@buffalodefenselaw.com.

he filed a notice of appeal for each client only as a protective measure in case they decided to challenge their convictions. Response at ¶¶ 7-8. D'Amico asserts that he had been unable to contact Caliz during the relevant time period, which prevented him from proceeding with the appeal, and that Caliz's recent claim (discussed below) that he had paid D'Amico $1,300 for the appeal was untrue and was the first suggestion that Caliz wished to proceed with it. *Id.* at ¶¶ 7(e)-(j), (m)-(n), (p). By contrast, D'Amico states that Nance informed him that he did not wish to proceed with an appeal, but failed to appear at his office to sign a pleading requesting its withdrawal, and D'Amico has not been able to contact him. *Id.* at ¶¶ 8(e), (g)-(h).

Regarding *Gonzalez*, D'Amico states that, after the district court denied Gonzalez's § 2254 petition, D'Amico instructed Gonzalez on how to take an appeal, but Gonzalez never asked for further assistance. *Id.* at ¶¶ 9(d)-(e). Two letters addressed to Gonzalez, attached to D'Amico's response as exhibits, reflect that D'Amico informed Gonzalez that D'Amico had filed a protective notice of appeal and that a $450 filing fee applied, and asked Gonzalez to contact him if further assistance was required. *Id.* at exhibits 3-4.

D'Amico does not address the specific defaults detailed in the January 2018 order, but states the following, apparently as an explanation for some or all of the defaults: (a) upon relocating his office in late summer/early fall of 2014, he stopped receiving emails to his old email account, which he believes was the account on record with this Court, and obtained a new telephone number; (b) he did not discover his non-receipt of emails through that old account until nearly a year later; (c) he lost two staff members when he relocated, leaving him without adequate staff to run his office; and (d) in or about December 2016, he lost all of the data on his computer, causing significant problems for his entire caseload and making day-to-day operations extremely difficult. *Id.* at ¶¶ 10-14.

3

Finally, D'Amico states that he is in good standing with all bars of which he is a member, but that he received, in 2011 and 2012, two letters of caution from the New York State Attorney Grievance Committee for the Eighth Judicial District. *Id.* at ¶¶ 4-5. The 2011 letter of caution concerned his failure to timely reregister as a member of the New York bar, while the 2012 letter concerned his default in a federal court forfeiture action resulting in a default judgment against his clients. *Id.* at exhibits 1-2. Although both letters state that a letter of caution is a "non-disciplinary disposition," *id.*, the second letter essentially warned D'Amico that it was expected "that it will not be necessary to review any similar incidents in the future," *id.* at exhibit 2.

**II.    Caliz's and Gonzalez's Responses to the January 2018 Order**

The January 2018 order instructed D'Amico to provide a copy of the order to Caliz, Nance, and Gonzalez, and to inform them that they may submit sworn declarations to this panel addressing any prejudice they may have experienced from D'Amico's conduct in this Court. Both Caliz and Gonzalez have submitted responding statements. D'Amico states in his response that his letter to Nance was returned to him as undeliverable.[2]

In his sworn statement, Caliz asserts that his appeal has merit, D'Amico provided ineffective representation due to his failure to timely prosecute the appeal, Caliz received no benefit from the $1,300 he had paid D'Amico, he was never contacted by D'Amico until he received D'Amico's letter informing him he could respond to the January 2018 order in this disciplinary proceeding, and he was prejudiced by D'Amico's defaults because he has now served his five-year term of incarceration and was to be released to a halfway house in February 2018. *See* 2-2-18 Caliz Affidavit. The Federal

[2] The Federal Bureau of Prison's website indicates that Nance was released from his imprisonment in November 2015, nearly two years after commencement of his appeal.

Bureau of Prison's website reflects that Caliz is now supervised by a Residential Reentry Management field office (which administers halfway houses) and is scheduled for release in June 2018; Caliz's four-year term of supervised release will apparently commence at that point.

Gonzalez submitted an unsigned letter in response to the January 2018 order. He primarily addresses D'Amico's performance in the underlying state court proceedings, but also states that D'Amico failed to file a timely notice of appeal in an unspecified proceeding. *See* 2-14-18 Gonzalez Letter. For present purposes, we assume that Gonzalez intended to reference D'Amico's failure to file a motion for a certificate of appealability in his appeal in this Court, rather than a "notice of appeal."[3] However, Gonzalez does not state that he had retained D'Amico for the appeal, or provide any other information bearing on whether D'Amico was obligated to proceed with it. Additionally, while he mentions the payment of various sums of money to D'Amico and another attorney, he does not state that he paid D'Amico any of that money for the appeal in this Court. The website of the New York State Department of Corrections and Community Supervision indicates that Gonzalez was released from his imprisonment in June 2017, and that his post-release supervision term has a "maximum expiration date" of August 3, 2018.

---

[3] According to Gonzalez and the New York Appellate Division decision in his direct appeal, D'Amico also represented Gonzalez during his state court trial and in his unsuccessful appeal from his conviction. *See* 2-14-18 Gonzalez Letter; *People v. Gonzalez*, 57 A.D.3d 1477 (4th Dep't 2008) (identifying D'Amico as Gonzalez's counsel). Although Gonzalez's letter mentions D'Amico's "failure to file a timely notice of appeal," that assertion does not appear to apply to either his direct appeal or the federal § 2254 proceeding: the Appellate Division's decision affirming Gonzalez's conviction was on the merits, and does not mention a notice of appeal or any timeliness issue, *see Gonzalez*, 57 A.D.3d 1477, and the notice of appeal in the § 2254 proceeding was timely filed, *see Gonzalez v. Lape*, 09-cv-917 (W.D.N.Y.), entries 8 (judgment), 9 (notice of appeal). As stated above, it is assumed, for present purposes, that Gonzalez intended to reference D'Amico's failure to file a motion for a certificate of appealability in the § 2254 appeal, rather than a "notice of appeal."

5

**III.  Disposition**

As an initial matter, D'Amico does not relate his office relocation, staffing, email, and computer problems to the specific defaults described in the January 2018 order.   In fact, the asserted time periods for those problems cover the dates of only a few of the specified defaults.   Additionally, failure to receive notifications from the Court, and an inability to electronically access the docket, do not excuse lengthy periods of inaction.  *See In re DeMarco*, 733 F.3d 457, 463 (2d Cir. 2013) ("As counsel of record, DeMarco . . . was directly responsible for ensuring his cases were proceeding in due course, even if his employees or the Court failed to inform him of deadlines, Court directives, or other important information.   Although counsel of record need not constantly monitor the Court's docket, counsel cannot allow lengthy periods of time to pass without periodic review.").

To the extent D'Amico attributes his defaults, and the dismissal of *Gonzalez*, to his inability to contact his clients, an attorney may not delay an appeal through seriatim defaults, or

> end the representation of a client without taking affirmative action, or permit the termination of an appeal by allowing its dismissal for lack of prosecution.   Depending on the precise circumstances, the proper course of action would have been to affirmatively seek, prior to any applicable deadline: (a) an extension of time, stay of proceedings, or withdrawal of the case without prejudice to reopening by a specified deadline, if [D'Amico] believed that the client might resurface and want to proceed with the case; (b) leave to withdraw as counsel; (c) leave to withdraw the case without prejudice; or (d) guidance from the Court.

*In re Payne*, 707 F.3d 195, 206 (2d Cir. 2013).

There are several significant aggravating factors: the defaults described in the January 2018 order occurred in two criminal appeals and one habeas corpus appeal, where significant liberty interests were at risk, *see In re Aranda*, 789 F.3d 48, 59 (2d Cir. 2015) (discussing criminal appeals); D'Amico's delays may have rendered his clients' appeals moot, in whole or part, since they were eventually released from imprisonment without first receiving a decision on the merits from this

6

Court, *id.* at 54-55 ("That loss of the opportunity to appeal, by itself, constitutes significant prejudice."); D'Amico has substantial experience as a lawyer, *see In re DeMell*, 589 F.3d 569, 573 (2d Cir. 2009); and his defaults in this Court occurred despite the warning he received in 2012 about future defaults.

We reject D'Amico's argument that Caliz suffered no prejudice from D'Amico's defaults because Caliz received the mandatory minimum sentence for his conviction. *See* Response at ¶ 7(o). As we have made clear in prior decisions, a criminal defendant suffers substantial prejudice from the delay of his appeal from his judgment of conviction regardless of the nature of his sentence or the ultimate merits of the appeal. *See Aranda*, 789 F.3d at 54-56 (discussing case law; holding that defendant-appellant suffered substantial prejudice "even if he received a sentence consistent with his plea agreement"). Additionally, even if D'Amico's defaults "caused little or no prejudice to his clients, he nonetheless 'caused prejudice of a different type: he wasted the time of opposing counsel, Court employees, and judges; delayed the processing of other litigants' cases; and caused unnecessary expense to the public.'" *Id.* at 50 (quoting *In re Gordon*, 780 F.3d 156, 159 (2d Cir.2015)).

We decline at this time to consider the disputed issue of whether Caliz paid D'Amico $1,300 for his appeal in this Court, or Gonzalez's assertions about various sums of money paid to D'Amico and another attorney, which may require a hearing. Under the circumstances, a determination of whether a hearing is necessary, and whether there is merit to Caliz's and Gonzalez's assertions, should be made in the first instance by the New York State Attorney Grievance Committee for the Eighth Judicial District. The record developed by that Committee concerning the default discussed in its 2012 letter of caution, which may be relevant to further proceedings, is not before this Court. Additionally, under New York's reciprocal discipline procedures, it is likely that the Committee will

7

initiate new proceedings concerning the defaults discussed in the present order whether or not we consider any additional issues. Furthermore, Gonzalez's assertions in his response to the January 2018 order primarily pertain to his state court proceedings, and that is likely also true of his assertions about the attorney's fees. For these reasons, we refer those issues to that Committee. *See* Second Circuit Local Rule 46.2(b)(4)(B)(vii) (providing that this Court's Committee on Admissions and Grievances may recommend that an attorney be "referred to another attorney disciplinary authority, law enforcement agency, or other agency or organization").

Upon due consideration of the above matters, it is hereby ORDERED that D'Amico is PUBLICLY REPRIMANDED for his misconduct in this Court, and is REFERRED to the New York State Attorney Grievance Committee for the Eighth Judicial District for further proceedings as are found necessary.

The Clerk of Court is directed to serve a copy of this order on D'Amico, the attorney disciplinary committees for the New York State Attorney Grievance Committee for the Eighth Judicial District and the United States District Court for the Western District of New York, and all other courts and jurisdictions to which this Court distributes disciplinary decisions in the ordinary course.[4]

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[4] Counsel to this panel is authorized to provide to other attorney disciplinary authorities, upon their request, all documents from the record of this proceeding. While we request that those documents remain confidential to the extent circumstances allow, we of course leave to the discretion of those disciplinary authorities the decision of whether specific documents, or portions of documents, should be made available to any person or the public.

**Appendix: Relevant Text of January 2018 Order**

**I.** *United States v. Caliz*, **13-4755**

In *Caliz*, D'Amico represents defendant-appellant Alexi Caliz in his appeal from a December 2013 criminal judgment sentencing him to, inter alia, 60 months' imprisonment. After the appeal was commenced, D'Amico failed to timely pay the filing fee or move for in forma pauperis status. *Caliz*, 13-4755, doc. 6 (order discussing default). Although a new attorney substituted for D'Amico shortly thereafter, *id.*, doc. 7 (notice of substitution), D'Amico returned to his representation of Caliz in December 2016, *id.*, doc. 41 (notice of substitution). In April 2017, D'Amico informed the Court that he had been unable to ask Caliz whether he should proceed with ordering the trial transcripts, but did not provide any further updates until late July 2017, after being ordered to do so by the Court. *Id.*, docs. 55 (April 2017 D'Amico letter), 59 (order), 60 (July 2017 D'Amico letter). Over the next two months, D'Amico failed to file the required update letters, despite telephone calls from the Clerk's Office. *Id.*, entries 61, 62 (noting voicemail messages left on 8-29-17 and 9-28-17). The docket reflects that D'Amico's next action in the appeal was on January 8, 2018, when he moved for an extension of time to file a motion to be relieved. *Id.*, doc. 64. This Court granted an extension until February 8, 2018, but directed D'Amico to inform the Court whether Caliz intends to proceed with this appeal. *Id.*, doc. 67.

[Paragraph deleted]

**II.** *United States v. Nance*, **14-254**

In *Nance*, D'Amico represents defendant-appellant Tyrone Nance in his appeal from a January 2014 criminal judgment sentencing him to, inter alia, 36 months' imprisonment. After the appeal was commenced, D'Amico failed to timely pay the filing fee or move for in forma pauperis status, and did not cure that default until informed by Court order that the appeal would be dismissed on that basis. *Nance*, 14-254, doc. 5 (order), entry 6 (noting payment). D'Amico then defaulted on the filing of this Court's Form B and was informed that the appeal would be dismissed if the default was not cured by March 19, 2014. *Id.*, doc. 7 (order). D'Amico did not comply. However, on March 20, 2014, he informed the Clerk's Office by telephone that he was arranging for admission to the Court's bar, and would that day email the Court a motion for an extension of time to file Form B and an Acknowledgement and Notice of Appearance form. *Id.*, entry 10 (describing conversation). The docket does not reflect the filing of the motion or form at that time. The Clerk's Office then left telephone messages for D'Amico about the missing documents on April 14, 2014, May 13, 2014, December 12, 2014, September 18, 2015, and July 13, 2016. *Id.*, entries 11, 12, 16, 17, 18 (describing telephone calls). The docket does not reflect any action by D'Amico until late October 2016, when he filed the missing forms. *Id.*, docs. 19-20.

This Court then informed D'Amico that he had defaulted on the filing of the index to the record on appeal ("the ROA index"), a certified copy of the docket entries, and a clerk's certificate; the docket reflects that they were to be filed by November 14, 2016. *Id.*, entry 25. D'Amico did not comply. In December 2016, the Clerk's Office left two telephone messages for D'Amico regarding the past-due ROA index and a transcript update letter. *Id.*, entries 26-27 (describing telephone calls). On December 12, 2016, D'Amico left a message advising the Court that a major computer malfunction in his office hindered his ability to do case work and file documents, and that he anticipated the problem would be resolved no later than December 14, 2016. *Id.*, entry 28 (describing message). On December 21 and 28, 2016, and January 5, 2017, the Clerk's Office left telephone messages for D'Amico about the overdue documents. *Id.*, entries 29-31 (describing messages). D'Amico thereafter filed the transcript update letter. *Id.*, doc. 33. D'Amico did not file the transcript update letters for January, February, March, or April 2017 until telephone calls were made by the Clerk's Office, with multiple calls being made in two of those months. *Id.*, entries 34, 35, 37, 38, 40, 42-44 (describing telephone calls), docs. 36, 39, 41, 45 (update letters). D'Amico informed the Clerk's Office that the April update letter would be filed on April 5, 2017, but did not file it until April 11, 2017. *Id.*, entry 44, doc. 45. The next update letter was not filed until late July 2017, and only after two additional telephone calls had been made by the Clerk's Office and an order entered requiring the filing of the letter. *Id.*, entries 46, 47 (describing telephone calls), docs. 51 (order), 52 (update letter). After two more telephone calls were made by the Clerk's Office about overdue documents, D'Amico moved to be relieved from his representation of Nance. *Id.*, entries 53, 54 (describing telephone calls), doc. 56 (motion).

[Paragraph deleted]

**III.    *Gonzalez v. Lape*, 11-2649**

In *Gonzalez*, D'Amico represented Leonard Gonzalez in his appeal from the denial of his 28 U.S.C. § 2254 petition challenging a New York State conviction. However, the appeal was dismissed based on D'Amico's failure to file a motion for a certificate of appealability. *Gonzalez v. Lape*, 11-2649, doc. 5 (order stating that appeal would be dismissed if motion was not filed by specified date), entry 9 (noting dismissal). [Remainder of order deleted].