In re Bitterman

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of June, two thousand twenty-four.

PRESENT:
> JOSÉ A. CABRANES,
> RICHARD C. WESLEY,
> MYRNA PÉREZ,
> *Circuit Judges.*

---

IN RE GREGORY VAL BITTERMAN,

> Attorney.

22-90198-am

ORDER OF
GRIEVANCE PANEL

---

FOR ATTORNEY:

GREGORY BITTERMAN
Great Neck, New York

In November 2022, Gregory Val Bitterman was ordered to show cause why disciplinary or other corrective measures should not be imposed on him based on his conduct in *United States v. Dalmau*, 17-2746 (2d Cir.), in which he represented the appellant, Christian O. Dalmau.

Bitterman's response to the November 2022 order was to be made under penalty of perjury and filed within 28 days; Bitterman did not comply with either directive. Regarding the deadline, he did not submit his response until February 2023, after being contacted twice by this Court. For present purposes, we construe his response as having been made under penalty of perjury and as requesting an

extension of time; as so construed, the extension is granted.

## I. Proceedings in *United States v. Dalmau*

Bitterman is not a member of this Court's bar but has been a member of the New York bar since 1986. His representation of Dalmau in this Court was pursuant to this Court's local rule requiring a criminal defendant's District Court counsel to continue the representation on appeal. *See* Second Circuit Local Rule 4.1(a).

In August 2017, Dalmau was sentenced to, inter alia, 120 months' imprisonment, based on his guilty plea to aiding and abetting the use of a firearm by an unlawful user of a controlled substance. *United States v. Dalmau*, W.D.N.Y. 14-cr-165, doc. 69 (judgment). Bitterman, Dalmau's counsel, filed a notice of appeal for Dalmau. *Id.*, doc. 68 (notice of appeal). Bitterman's conduct in the appeal, including his various defaults, is detailed in our November 2022 order. We note the following subsequent proceedings:

- In January 2023—more than two months after both the November 2022 order and a telephone message from a Court employee requesting the status of a motion to dismiss Bitterman had said he would file—Bitterman filed that motion, *see* 2d Cir. 17-2746, doc. 31 (motion);

- in response to Bitterman's January 2023 motion, this Court: (a) noted that the motion did not comply with this Court's relevant local rule, and that Bitterman had failed to respond to the November 2022 order to show cause, (b) sua sponte relieved Bitterman as counsel, and (c) appointed substitute counsel to determine whether Dalmau wished to pursue the appeal, *see id.*, doc. 34 (order);

- in June 2023, substitute counsel informed the Court that Dalmau did not wish to proceed with the appeal and, as a result, counsel requested that the appeal be deemed withdrawn, *id.*, doc. 43 (letter); and

- later that month, the Court granted the request to withdraw the appeal, *id.*, doc. 48 (order).

## II. Response to November 2022 Order

In his response to our November 2022 order, Bitterman states that Dalmau had instructed him to neither proceed with the appeal nor withdraw it, but to allow it to be dismissed as abandoned. Response at 1. However, at a later point, Dalmau entered into a plea agreement in another criminal case that required withdrawal of his appeal in this Court; in Bitterman's response, he states, without

explanation, that he mistakenly thought that the plea agreement's requirement that the appeal be withdrawn "ended [his] work for Mr. Dalmau." *Id.* at 2; *see also* 2d Cir. 17-2746, doc. 29 (Bitterman letter to Court; stating that Bitterman had "mistakenly believed that [the plea agreement] would automatically withdraw the above referenced Notice of Appeal."). Although Bitterman failed to identify Dalmau's other criminal case, it appears he is referencing *United States v. Dalmau*, E.D.N.Y. 18-cr-250 (the "Eastern District case").

Bitterman does not explain how long he mistakenly believed that the withdrawal of the appeal would be automatic or what caused him to change his mind. However, he states that, on an unspecified date, he visited Dalmau in prison "and submitted a motion to withdraw the appeal"—perhaps meaning that the motion was presented to Dalmau for his review or, alternatively, that it was submitted to this Court after Dalmau's review. Response at 2. During that prison visit, Dalmau informed Bitterman that he had "willingly abandoned his appeal when he was sentenced in the Eastern District and was perplexed why [Bitterman had] made a special visit to him about it." *Id.* After Bitterman explained the "situation" to him, Dalmau asked to discuss the matter with his other attorney, who spoke Spanish. *Id.* Although the chronology is unclear, it appears likely that the described prison visit was followed by Bitterman's noncompliant January 2023 motion to withdraw, which stated that Dalmau had told Bitterman that he wished to withdraw the appeal; however, the motion was not accompanied by the client statement required by Second Circuit Local Rule 42.2. *See* 2d Cir. 17-2746, doc. 31 (motion).

As mitigating factors, Bitterman notes that he is still trying to recover from a devastating financial loss in 2009, he is the sole supporter of six relatives, Dalmau's family never paid the requested fees, and his practice entails daytime criminal work and village night court work (perhaps meaning to suggest a reason for his difficulty meeting deadlines). *Id.* Additionally, Bitterman represents that he has never been disciplined by any court and believes that Dalmau was not prejudiced by his conduct. *Id.* at 2. Bitterman also states that Dalmau was "very pleased" with Bitterman's district court representation and that Bitterman never would have represented Dalmau in the appeal had he known that his admission to this Court's bar had expired. *Id.* at 1.

Bitterman's response does not explain his failure to timely respond to the November 2022 order, although in an emailed message to a Court employee he noted unspecified "personal matters" had caused some part of the delay. He also does not individually address the many instances detailed in the November 2022 order where he failed to timely comply with, or respond to, directives and requests of this Court in Dalmau's appeal. However, it appears possible that Dalmau's instruction that Bitterman not proceed with the appeal caused him to disregard some or all of those directives and requests.

3

## III.  Discussion and Disposition

As an initial matter, it was Bitterman's responsibility to comply with the appellate rules and directives of this Court, regardless of his client's instructions to the contrary.  *In re Aranda*, 789 F.3d 48, 52 (2d Cir. 2015) (stating that counsel "may not . . . permit the termination of an appeal by allowing its dismissal for lack of prosecution," even when the client has consented to its abandonment (internal quotation marks omitted)).  Thus, no weight is given to Bitterman's assertion that Dalmau had instructed him to default on the appeal.[1]

To the extent Bitterman was unsure how to balance the conflicting demands of his client and this Court's rules and directives, our case law makes clear that Bitterman had options other than to blindly follow his client's strategy.  *See id.* ("[A]n appellant's counsel of record who determines that the appeal will not proceed for any reason is required to inform the Court of the situation and seek to either withdraw the appeal or withdraw as counsel." (internal quotation marks omitted)).[2]

We also reject Bitterman's assertion that he had believed that Dalmau's plea agreement in the Eastern District case automatically withdrew his appeal in this Court.  First, Bitterman does not identify any statute, rule, or other mechanism that might conceivably have caused a reasonable attorney to believe such a withdrawal had occurred; he also does not suggest he consulted with this Court about that possibility or even examined the docket sheet.  Second, and more important, the record reflects that, during most of the relevant period, Bitterman knew that no such automatic withdrawal of the appeal had occurred.  Dalmau pled guilty in the Eastern District case in September 2020, *see* E.D.N.Y. 18-cr-250, entry for September 18, 2020 (minute entry for plea hearing and court's acceptance of guilty plea), and Bitterman thereafter received several telephone communications from this Court that made clear that he was expected to affirmatively move for withdrawal of the appeal:

---

[1] *See also* N.Y.S. Rule of Professional Conduct 3.3(f)(3) ("In appearing as a lawyer before a tribunal, a lawyer shall not . . . intentionally or habitually violate any established rule of procedure or of evidence"); *id.*, Rule 1.4(a)(5) ("A lawyer shall . . . consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by these Rules or other law."); *see also* ABA Standards for Imposing Lawyer Sanctions ("ABA Standards") § 9.4(b) (1986, amended 1992) (stating that "agreeing to [a] client's demand for ... improper behavior or result" should not be considered a mitigating or aggravating factor).

[2] *See also In re Payne*, 707 F.3d 195, 203-04 (2d Cir. 2013) ("If there was any reason to believe a stipulation [of dismissal] might not be filed prior to the deadline for his brief, Payne's obligation was to (a) seek an extension of time or stay of proceedings, (b) file his brief, or (c) request guidance from the Court.  Simply ignoring the deadline, or assuming another party will fulfill that obligation, is not an option."); *In re Yan*, 390 F. App'x 18, 20 (2d Cir. 2010) ("[I]f it is unclear whether a client wishes to proceed, an attorney may, depending on the circumstances, request: an extension of time to file his brief, a stay of the appeal, withdrawal as counsel, withdrawal of the appeal, or advice from the Court.").

- in October 2020, a Court employee: (a) called Bitterman about various overdue documents and the filing fee; (b) was told that Bitterman intended to withdraw the appeal as moot; (c) informed Bitterman of the documents that needed to accompany the motion to withdraw; and (d) was told the motion would be submitted "in a couple of weeks due to limited [prison] visitations";

- in May 2021, the Court employee sought an update about the anticipated motion and was told by Bitterman that the motion would be filed after Dalmau "sign[ed] the papers in person"; and

- from October 2021 through May 2022, four voicemail messages were left for Bitterman concerning the motion to withdraw and his defaults in the appeal.

2d Cir. 17-2746, docket entries 23–28 (nonpublic entries describing telephone conversations and messages). Those telephone communications were described in the November 2022 order, and were not disputed (or mentioned) in Bitterman's response to that order.[3] While Bitterman's August 2022 letter to the Court also included his assertion that he had thought the Eastern District plea agreement would automatically withdraw the appeal, *see* 2d Cir. 17-2746, doc. 29 (letter), neither that letter nor the response to the November 2022 order made any mention of the preceding communications with the Court or suggested how that assertion might be consistent with those communications.[4]

For present purposes, we will assume Bitterman did not intend to mislead this Court regarding his asserted belief in an automatic withdrawal of the appeal. *Cf. In re Gordon*, 780 F.3d 156, 161 (2d Cir. 2015) ("[T]he duty of candor is so basic, and so important to proceedings before the Court and Committee, that the possibility of suspension should be considered in every case involving violation of that duty."). But even if he did not accurately remember the relevant circumstances (at the time he wrote either the August 2022 letter or his response to the November 2022 order), at the very least that assertion reflects a serious lack of care in responding to the November 2022 order, which itself provided much of the relevant information. *See Aranda*, 789 F.3d at 57 ("[Attorney's] failure to properly respond [to the Court's order to show cause] … constitutes both an independent basis for disciplinary action and an

---

[3] In his response, Bitterman states that he "do[es] not have an independent recollection of the timeline and details" provided in the November 2022 order concerning Dalmau's appeal, but "believe[s] them to be accurate." Response at 1.

[4] It is possible that Bitterman held his belief in an automatic withdrawal of the appeal beginning with the date a plea agreement was signed and not beginning with the September 2020 entry of the guilty plea. However, neither he nor the record informs us when the agreement was signed and, in any event, it is not clear how a reasonable attorney would believe that a mere signed agreement would cause the withdrawal of the appeal without the agreement somehow being brought to the attention of the Court).

5

aggravating factor.").   In any event, Bitterman has not presented a valid excuse for his extensive delays during that period and no valid excuse is suggested by the record.

We find several aggravating factors: (1) Bitterman is an attorney with many years of experience; (2) he defaulted in this disciplinary proceeding by not filing a response until reminded twice, and did not move for an extension of time or explain his default; (3) on the merits of this disciplinary matter, he failed to conduct a proper investigation for purposes of responding to the November 2022 order; (4) his delays and defaults in both the appeal and this disciplinary proceeding prejudiced this Court and the public (although no prejudice to the opposing party in the appeal is evident); and (5) he continued to engage in misconduct (in both the appeal and this disciplinary proceeding) after being put on notice by the November 2022 order that the Court was concerned by his conduct and was considering significant disciplinary measures.[5]

Mitigating factors include: (1) lack of a disciplinary history; (2) apparent lack of a dishonest or selfish motive; (3) apparent lack of prejudice to Dalmau; and (4) his misconduct being limited to one appeal (although it then continued in this disciplinary proceeding).[6]

---

[5] *See In re Aranda*, 789 F.3d 48, 58 (2d Cir. 2015) (treating failure to properly respond to order to show cause as significant aggravating factor); *In re Gordon*, 780 F.3d 156, 159 (2d Cir. 2015) (stating that attorney's defaults prejudiced others by wasting the time of, inter alia, Court employees and judges, delaying the processing of other litigants' cases, and causing unnecessary expense to the public); *In re Warburgh*, 644 F.3d 173, 176 (2d Cir. 2011) (stating that default in disciplinary proceeding was "both an independent basis for disciplinary action and an aggravating factor"); *In re Roman*, 601 F.3d 189, 196 (2d Cir. 2010) ("[T]he fact that Roman continued to engage in misconduct in this Court after being put on notice by the Ninth Circuit about similar misconduct constitutes a significant aggravating factor."); *In re DeMell*, 589 F.3d 569, 573 (2d Cir. 2009) (stating that attorney's "many years of experience is an aggravating factor"); *In re Schwartz*, 665 F. App'x 99, 103 (2d Cir. 2016) (summary order) (holding that the attorney's failure to alter his behavior, after this Court's order to show cause in the disciplinary proceeding put him on notice of the Court's concerns, constituted a significant aggravating factor); ABA Standards § 9.22(i) (1986, amended 1992) (listing "substantial experience in the practice of law" as aggravating factor).   The fact that the misconduct occurred in a criminal appeal, where significant liberty interests were at risk, normally would be treated as an additional aggravating factor.   *See Aranda*, 789 F.3d at 59.   However, we accept Bitterman's assertion that Dalmau had instructed him to default and thus waived his liberty interests.

[6] *See* ABA Standards § 9.32(a), (b) (listing absence of prior disciplinary record and absence of dishonest or selfish motive as mitigating factors); *In re DeMaio*, No. 23-90033, 2023 WL 4567990, at *5 (2d Cir. July 18, 2023) (stating that misconduct having been limited to one case was a mitigating factor); *In re Hahn*, 495 N.Y.S.2d 305, 306 (4th Dep't 1985) (treating absence of prejudice or loss to clients as mitigating factor).   The "personal matters" that contributed to the untimely filing of Bitterman's response to the November 2022 order are not treated as mitigating factors.   Bitterman provided no details, did not link those matters to the period when his response was due, or explain why he could not have filed a simple motion for an extension of time.   *See In re Hochbaum*, 649 F. App'x 80, 84 (2d Cir. 2016).   We also do not treat Bitterman's lack of experience in this Court as a mitigating factor, since it is not clear why it might excuse his failure to comply with clear directives of this Court or his failure to respond to messages left by Court employees.

Upon due consideration of the above matters, it is hereby ORDERED that Bitterman is PUBLICLY REPRIMANDED for his misconduct in this Court. Aside from his misconduct in Dalmau's appeal, Bitterman continued his misconduct in this disciplinary proceeding after being put on notice of this Court's concerns about his conduct. And that continued misconduct was significant: by failing to cogently address the matters raised in the November 2022 order, and failing to timely respond to that order, Bitterman impeded this Court's ability to review and resolve the relevant issues. *See In re Warburgh*, 644 F.3d 173, 177 (2d Cir. 2011) ("[I]n most cases, when an attorney knowingly defaults in a disciplinary proceeding, and fails to show good cause or excusable neglect for the default, the resulting disciplinary measure, for that misconduct alone, should be no less than a public reprimand."); *In re Hochbaum*, 649 F. App'x 80, 84 (2d Cir. 2016) ("Because of the public's strong interest in disciplinary proceedings, disciplinary dispositions should be public unless the misconduct was minor or there are significant mitigating circumstances.").

The Clerk of Court is directed to release this decision to the public by posting it on this Court's website and providing copies to the public in the same manner as all other unpublished decisions of this Court, and to serve a copy of this order on Bitterman, the disciplinary committees for the New York State Appellate Division, Second Department, and the United States District Court for the Eastern District of New York, and all other courts and jurisdictions to which this Court distributes disciplinary decisions in the ordinary course.[7]

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[7] Counsel to this panel is authorized to provide to other courts and attorney disciplinary authorities, upon their request, all documents from the record of this proceeding. While we request that those documents remain confidential to the extent circumstances allow, we of course leave to the discretion of those courts and disciplinary authorities the decision of whether specific documents, or portions of documents, should be made available to any person or the public.