Matter of DeMaio (2025 NY Slip Op 03016)

Matter of DeMaio

2025 NY Slip Op 03016

Decided on May 20, 2025

Appellate Division, First Department

Per Curiam 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: May 20, 2025
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Present — Hon. Sallie Manzanet-Daniels
Justice Presiding

Motion No. 2024-05966|Case No. 2024-07350|

[*1]In the Matter of John Peter DeMaio an attorney: Attorney Grievance Committee for the First Judicial Department, Petitioner, John Peter DeMaio (OCA Atty Reg. 1256643), Respondent.

Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent, John Peter DeMaio, was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the Second Judicial Department on March 15, 1978.

Jorge Dopico, Chief Attorney,
Attorney Grievance Committee, New York
(Vitaly Lipkansky, of counsel), for petitioner
Respondent, pro se.

Per Curiam 

Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent, John Peter DeMaio, was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the Second Judicial Department on March 15, 1978.
Jorge Dopico, Chief Attorney,
Attorney Grievance Committee, New York
(Vitaly Lipkansky, of counsel), for petitioner
Respondent, pro se.
Motion No. 2024-05966 — March 3, 2025
In the Matter of John Peter DeMaio, an attorney
Per Curiam Respondent John P. DeMaio was admitted to the practice of law in the State of New York by the Second Judicial Department on March 15, 1978, under the name John Peter DeMaio. At all times relevant to this proceeding, respondent maintained an office for the practice of law in the First Judicial Department.
By July 18, 2023 order, the United States Court of Appeals for the Second Circuit publicly reprimanded respondent for misconduct before that court. Specifically, respondent was disciplined for failing to proceed with representation by ceasing work without permission from the court, providing inappropriate responses or failing to respond to court orders, assigning responsibility to respond to court orders to another attorney without authority to do so, failing to file required status reports, and failing to remedy defective responses to court orders.
By motion dated November 29, 2024, the Attorney Grievance Committee (AGC)seeks an order, pursuant to Judiciary Law § 90(2), (22 NYCRR) 1240.13, and the doctrine of reciprocal discipline, finding that respondent has been disciplined by a foreign jurisdiction, and imposing a six-month suspension, or issuing such discipline as this Court deems just and proper.
Respondent was referred to the Grievance Panel for the Second Circuit based onhis conduct in Wilmington PT Corp. v Mitra (2d Cir, No. 21-2424), in which he represented the appellants, Jacob Milton and Ranjit Kumar Mitra. According to the order, Wilmington PT appealed from a judgment directing the foreclosure and sale of real property owned by the appellants (see In re DeMaio, 2 [2d Cir, July 18, 2023, No. 23-90033-am] [Order of Grievance Panel] [hereinafter Grievance Panel Order]). In September 2021, respondent moved for a stay of the scheduled auction of the property. The motion was denied. Thereafter, the Second Circuit was advised by an individual, who was not a party to the action, that one of the appellants had filed for bankruptcy. The Second Circuit issued an order on October 26, 2021, stating:
"Appellants move for a stay of certain district court orders. Upon due consideration it is here ORDERED that the parties file, within 21 days of the date of this order, detailed letter-briefs addressing the following issues:
"(1) Whether the real property at issue has been sold, and, if
so, whether the sale has rendered the stay motion moot
in whole or part; and
"(2) Whether this [*2]appeal is subject to an automatic bankruptcy
stay, and, if so, (a) whether a particular party or parties
were responsible for informing this Court of the stay, (b)
whether any form of notice was given to this Court, and
(c) if notice was not given, whether any part or attorney
should be sanctioned or otherwise disciplined for that
omission.
The parties are advised that the presentation of frivolous arguments in response to this order is itself sanctionable."
Respondent's response to the October 26th order simply stated, "[t]he Bankruptcy was not filed by my office, but by a separate Bankruptcy Attorney. The Court's request for information has been forwarded to that Attorney." Respondent did not provide the name of the bankruptcy attorney and did not provide any of the information required by the October 26 order. Respondent also did not address whether his motion for a stay was moot, whether he or anyone else should have informed the Second Circuit about the bankruptcy or the stay, when he became aware of the bankruptcy, or whether he or anyone else should be sanctioned for failing to inform the Second Circuit about the bankruptcy.
In November 2021, the Second Circuit stayed the appeal and directed the appellants to "inform this Court, in writing, as to the status of the automatic stay, within 14 days of the date of this order, thereafter at 30-day intervals, and immediately when the stay is lifted . . ." The order also directed that within 21 days after the bankruptcy stay is lifted, to "show cause why the appeal should not be dismissed and/or the Appellants' attorney sanctioned for failing to properly respond to the Court's order dated October 26, 2021." Respondent did not file any of the required status reports, even though the Second Circuit issued four written status requests between January 2022 and December 2022. A Second Circuit employee also left a voicemail requesting an update on respondent's voicemail system. Respondent also did not respond to the Second Circuit's directive to show cause why the appeal should not be dismissed and why he should not be sanctioned for failing to respond appropriately to the October 2021 order.
In February 2023, respondent informed the Second Circuit by telephone that he would file a status report. He failed to do so. After the Second Circuit issued another request for a status report, respondent submitted a letter that stated in full, "I am not the Bankruptcy Attorney. Thank you."
In March 2023, the Second Circuit issued an order lifting the stay of the appeal because the Second Circuit had determined that the February 2023 bankruptcy order allowed the appeal to proceed. The order, which noted respondent's failure to comply with its directives, ordered appellants to propose a filing date for their brief and required respondent to show cause as to why he should not be sanctioned for failing to comply with the Second Circuit's orders and failing [*3]to notify the Second Circuit as to the status of the bankruptcy matter (Wilmington PT Corp. v Mitra [2d Cir, Mar. 10, 2023, No. 21-2424] [Order]).
On March 27, 2023, respondent moved to withdraw the appeal. Respondent also moved for that part of the order requiring him to show cause as to why he should not be sanctioned to be "withdrawn as moot." Respondent also filed a separate, defective motion which noted that respondent was not the bankruptcy attorney, that he moved to withdraw the appeal after learning about the approval of the loan modification in bankruptcy court, and that sanctions were not indicated in the matter.[FN1] The Second Circuit granted respondent's request to withdraw the appeal but denied respondent's request to terminate the part of the order concerning sanctions. The matter was forwarded to the Grievance Panel for the Second Circuit.
The Second Circuit Grievance Panel rejected respondent's claim that his representation was limited to the filing of the notice of appeal, stating that the notice did not suggest that his representation was limited in any way and that respondent's motion for a stay also stated that he was counsel to the appellants without any limitation (Grievance Panel Order at 5). Moreover, the Grievance Panel noted that "[o]nce an attorney enters an appearance in this Court, the attorney is obligated to proceed with the representation . . . until the Court either grants the attorney's motion to withdraw . . . or removes the attorney . . ." (id., citing In re Tustaniwsky, 758 F3d 179, 182 [2d Cir 2014]; In re Payne, 707 F3d 195, 206 [2d Cir 2013]).
The Grievance Panel noted that respondent's submissions, or lack thereof, inresponse to the Second Circuit's directives and orders were inappropriate. The Grievance Panel noted that while respondent was not the bankruptcy attorney, "he presumably was capable of providing much of the information required by the October and November 2021 orders . . ." and "[a]n attorney responding to disciplinary charges must make reasonable efforts to review all relevant records and other evidence . . . ." (Grievance Panel Order at 6, citing In re Aranda, 789 F3d 48, 56 [2d Cir 2015]). The Second Circuit Grievance Panel also found that it was inappropriate for respondent to assign the responsibility of responding to the orders issued by the Second Circuit to the bankruptcy attorney since respondent was the attorney of record, noting that even if he was not familiar with the details he had the ability to address whether a particular party should have informed the Second Circuit about the bankruptcy stay, confirm whether any notice was given, and address whether anyone should be sanctioned for failing to do so.
Respondent's failure to file any of the required status reports was also deemed inappropriate by the Grievance Panel, who noted that "[t]he docket reflects that much time and effort was expended by Court personnel in trying to persuade DeMaio to comply with his obligations — time [*4]and effort that could have gone to the processing of other cases, which were effectively delayed as a result of DeMaio's defaults" (Grievance Panel Order at 7). The Grievance Panel also expressed concern over respondent's failure to respond to the November 2021 order to show cause and his failure to cure his defective response to the March 2023 order to show cause. The Grievance Panel stated found that the "failures not only can be treated as an admission that he did, in fact, engage in the specified misconduct and lacked any legitimate excuse for it, but moreover, they constitute an independent basis for disciplinary action" (id.)
In imposing discipline, the Grievance Panel considered the following factors inaggravation:
Respondent's many years of experience as an attorney (id.).
Respondent's prior disciplinary history, which includes a 2021 public censure from the Appellate Division, First Department for neglecting several client matters, advancing an unwarranted claim, and leaving opposing counsel a message with expletives (Matter of DeMaio, 200 AD3d 140 [1st Dept 2021]). Respondent was also admonished on four prior occasions for neglecting a client matter (1996), sending a misleading letter to a bank for a client (2010), neglecting a matrimonial matter (2014), and representing clients with differing interests (2015) (id. at 5).
Respondent's failure to correct his behavior before the Second Circuit despite receiving several warnings (id. at 8).
Respondent's failure to address the misconduct noted in the Second Circuit's orders (id.).
According to the Grievance Panel, although respondent did not offer any facts in mitigation, two minor mitigating factors were noted. First, despite having experience in other venues, respondent rarely represented clients in the Second Circuit. Second, the misconduct related to a single case and the resulting prejudice to the public, other litigants, and the Court was limited (id.).
In imposing a public reprimand, the Grievance Panel noted that "[be]causeDeMaio is not currently a member of this Court's bar, we do not have occasion to consider a period of suspension." However, the misconduct "likely would have warranted a suspension had he been a member of this Court's bar" (id.).
In a proceeding seeking reciprocal discipline, as here, pursuant to 22 NYCRR1240.13, respondent may raise the following defenses: (1) lack of notice or opportunityto be heard in the foreign jurisdiction constituting a deprivation of due process; (2) aninfirmity of proof establishing the misconduct; or (3) that the misconduct for which theattorney was disciplined in the foreign jurisdiction does not constitute misconduct inthis state (see Matter of Milara, 194 AD3d 108, 110 [1st Dept 2021]).
The AGC argues that none of the enumerated defenses apply herein because respondent was afforded due process in that he was given notice and an opportunity to show cause why he should not be sanctioned for failing to comply with the orders [*5]and failing to notify the Second Circuit of the status of the bankruptcy action within 21 days of the Second Circuit's order to show cause dated March 10, 2023. The matter was then referred to the Grievance Panel for consideration.
Respondent also submitted a response to the Second Circuit's order to show cause on March 27, 2023, which the Grievance Panel considered in rendering its decision. Respondent also filed a separate defective motion asking that he not be sanctioned, which was accepted and considered by the Second Circuit in rendering its decision. Thus, respondent had both notice and an opportunity to be heard.
The AGC also argues that respondent has no basis to raise an infirmity of proof defense because the findings by the Grievance Panel were amply supported by the record. Respondent was given numerous opportunities to respond to the orders, provide status reports as directed, and remedy defective responses, but he failed to do so.
Finally, the AGC argues that the misconduct for which respondent was disciplined also constitutes misconduct in New York. The AGC notes that while the Second Circuit did not cite the New York Rules of Professional Conduct (RPC) (22 NYCRR 1200.0) that respondent failed to proceed with a representation by essentially withdrawing from the appearance without court permission in violation of rule 1.16(d), which prohibits attorneys from withdrawing from employment in a matter before that tribunal without its permission. Respondent also violated rule 3.4(c), which prohibits attorneys from disregarding the ruling of tribunals and engaging in conduct intended to disrupt the tribunal by failing to comply with court orders.[FN2] Respondent violated rule 8.4(d), which prohibits engaging in conduct prejudicial to the administration of justice by failing to provide status reports and assigning the responsibility to do so to another attorney.
The AGC seeks an upward departure in this matter, noting that the SecondCircuit limited its discipline to a public reprimand because respondent is not a memberof that bar.[FN3] In seeking a six-month suspension, the AGC argues that respondent waspublicly censured by this Court in 2021 and has been admonished four times.Moreover, the AGC refers to the Second Circuit's finding that respondent continued hismisconduct after being warned of potential sanctions and failed to acknowledge that hisconduct was inappropriate. The Committee also notes that respondent failed to advise the AGC of the discipline imposed by the Second Circuit as required by 22 NYCRR 1240.13(d), which has been found by this Court to be an aggravating factor.
Citing cases in which this Court has imposed discipline ranging from three months to three years, the AGC argues that this Court has imposed short suspensions upon attorneys who engaged in similar misconduct but had little or no prior discipline (see Matter of Wellman, 209 AD3d 53 [1st Dept 2022]; Matter of Crowe, 204 AD3d 5 [1st Dept 2022], lv denied 39 NY3d [*6]901 [2022]; Matter of Schneider, 203 AD3d 34 [1st Dept 2022]).
Arguing primarily that there was insufficient proof of misconduct and that theimposition of discipline would be unjust, respondent opposes the imposition of any discipline by this Court. Alternatively, respondent informally seeks a sanction hearing. Respondent also raises concerns about the caselaw relied on by the AGC and the factors raised in aggravation and mitigation. In requesting a sanction hearing, respondent argues that a hearing would allow this Court to review the hearing transcript as well as the Referee's recommendation and would provide respondent "an opportunity to call witnesses and submit additional documents and also present mitigating evidence; all from live witnesses." Respondent lists his client, J.M., the bankruptcy attorney, S.P., attorney for the appellee, A.W., and "numerous other individuals" as potential witnesses.
With respect to his defaults in the Second Circuit, respondent argues that he wasnot the best source for the information sought by the Second Circuit. Respondent notesthat bankruptcy is a public record and, as such, the Clerk of the Second Circuit had fullaccess to the information sought from respondent, including the name and pedigree of
the bankruptcy attorney. Respondent also states that his "office manager examined an unrelated pending Bankruptcy online and was able to review, print, and determine the basic status of the same in less than three minutes," thus it was not necessary for respondent to provide the requested information. Ultimately, because the Second Circuit received the information requested from the Appellee, respondent felt no need to reply to the orders, stating that "further efforts for [sic] Your Affiant [were] unnecessary."
Respondent also argues that the Second Circuit should have dismissed the orderto show cause as moot once respondent withdrew the appeal with prejudice prior to theimposition of discipline. Respondent alleges that the Second Circuit "expended more time and effort in imposing their discipline than by simple online inquires by the Clerkof the Court as to the status of the Bankruptcy." Respondent further argues that once the appeal was withdrawn with prejudice, there was no reason to assume that further action was necessary.
With respect to sanction, after attempting to distinguish his case factually from those cited by the AGC, respondent cites to Matter of Geller (218 AD3d 55 [1st Dept 2023]) and Matter of Teichberg (121 AD3d 319 [1st Dept 2014]) for the proposition that this Court has discretion to determine that additional discipline would be "unjust" or "unnecessary." Respondent also cites to Matter of David (3 AD3d 174 [1st Dept 2004]), arguing that the "absence of financial or emotional harm to a Client are mitigating factors; and harm to Client is, in fact, a necessary prerequisite for severe discipline." Respondent further argues that the absence of an improper motive and absence of harm are [*7]important mitigating factors, as well as a lengthy career, good conduct, and positive contributions to the community. While none of the cases that respondent cites stand for the propositions that respondent reports, it is understood from his opposition that respondent seeks leniency based on the lack of specific harm or malignant motive.
To that end, respondent argues not only that there is no claim of unethicalconduct made by his client, but that his client was not caused any harm. In fact, respondent submitted a letter from his client, in which his client opposes the instant motion and states, "I see no basis for disciplining Mr. DeMaio." The client continues,
"I do not understand why the Second Circuit with all its resources had to depend on the non-bankruptcy attorney for the bankruptcy status and I clearly believe the response by the Second Circuit to be excessive and the request for the suspension by the Committee to be even more excessive. Since the Bankruptcy information was online and easily obtainable I believe the Second Circuit was more concerned with complete deference toward it rather than any perceived lack of ethics by Mr. DeMaio."
With respect to sanction and his prior discipline, respondent states that, "whilenot minimizing" his prior discipline, his misconduct occurred over the course of a 46-year career with an active general practice. Respondent provided multiple character letters attesting to respondent's character, which he states should be considered in mitigation. Respondent also asserts that, although the Second Circuit did not cite lack of remorse as a factor in aggravation, the AGC made reference to same in its moving papers. As such, respondent "penned and submitted an open letter to the Second Circuit," in which he stated, "I deeply regret not having been more timely and more complete in my responses . . . I fully recognize that this has caused the Court to expend unnecessary time and effort on This Matter."
Lastly, respondent argues that any suspension would be tantamount to disbarment due to respondent's advanced age. While he has "no plans to retire or even slow down," even a short suspension would "terminate my career" because clients wouldseek other representation. Further, respondent argues that his future earning capacity would be harmed because potential clients would Google his background online.
The AGC argues that respondent's opposition fails to raise any of the threeavailable defenses to the imposition of reciprocal discipline. The AGC argues that although respondent purports to assert a claim as to the sufficiency of proof, respondent simply reiterates the arguments he previously made before the Second Circuit. The Second Circuit based its decision on its own records which showed respondent disregarded the Second Circuit's orders. Moreover, the Second Circuit decision recited respondent's arguments against discipline, which appear to be the same that he presents to this Court. Thus, the Second [*8]Circuit already considered these arguments and respondent's disagreement with the conclusions drawn by the Second Circuit does not raise a proper defense to the imposition of reciprocal discipline.
The AGC also notes that while respondent asserts that there was insufficient proof to support the Second Circuit's misconduct finding, respondent "paradoxicallyoffers an apology for his actions in not being sufficiently timely . . ." The AGC submits that respondent "essentially admits that he committed the misconduct, and that his defense on the grounds of sufficiency-of-proof should be rejected."
The AGC also argues that respondent's argument that the imposition of disciplinewould be "unjust" is unavailing as it is based mainly on his resume, age, purported remorse, and claim that his suspension would be tantamount to a disbarment. The AGC argues that the length respondent's career and accomplishments must be balanced against his prior discipline and the alleged misconduct.
With respect to respondent's alleged regret or remorse regarding his misconduct,the AGC argues that respondent's claim of remorse is not to be believed given his attempts to argue against liability. As to respondent's claim of financial hardship, the AGC states that "it is well-settled in this Court's jurisprudence that the financial and family consequences of a suspension from practice do not serve as a basis to avoid a suspension" (see Matter of Lindenbaum, 165 AD3d 53 [1st Dept 2018]; Matter of Alperin, 66 AD3d 309 [1st Dept 2009]).
We find that none of the defenses to reciprocal discipline are available to respondent because he was on notice of the misconduct allegations at issue and was given an opportunity to show cause why he should not be sanctioned for failing to comply with the orders and failing to notify the Second Circuit of the status of the bankruptcy action within 21 days of the Second Circuit's Order to Show Cause dated March 10, 2023. Moreover, respondent submitted a response to the Second Circuit's order to show cause on March 27, 2023, which the Grievance Panel considered in rendering its decision. The Second Circuit also considered respondent's defective motion asking that he not be sanctioned.
Respondent's claim that there was an infirmity of proof similarly fails because thefindings by the Grievance Panel were amply supported by the record. Respondent wasgiven numerous opportunities to respond to the Second Circuit's orders, provide statusreports as directed, and remedy defective responses, but he failed to do so.
With respect to the RPC violations, respondent's conduct as discussed in the Second Circuit's order clearly violates rules 3.4(c), and 8.4(d) of the RPC. Rule 3.4(c) prohibits attorneys from disregarding the ruling of tribunals. Rule 8.4(d) prohibits an attorney from engaging in conduct that is prejudicial to the administration of justice. Respondent violated both rules by repeatedly and willfully failing to appropriately respond to the Second [*9]Circuit's orders despite several requests and warnings that his failure to do so may have negative consequences.
Rule 1.16(d), however, which prohibits attorneys from withdrawing from employment in a matter before that tribunal without its permission, is not the best rule for this misconduct. Rather, respondent's conduct, in failing to respond to the Second Circuit's orders, assigning responsibility to respond to the bankruptcy attorney who was not the attorney of record, and claiming that his appearance was limited in scope violated rule 1.3(a), which states that "a lawyer shall act with reasonable diligence and promptness in representing a client." Respondent failed to act with reasonable diligence and promptness when he repeatedly failed to comply with the Second Circuit's orders, regardless of whether the information sought was publicly available.
Thus, the only issue left to decide is the appropriate sanction to impose. ThisCourt's general rule is that "significant weight should be given to the sanction imposedby the jurisdiction where the misconduct occurred because the foreign jurisdiction hasthe greatest interest in fashioning sanctions for misconduct" (Matter of Blumenthal, 165AD3d 85, 86 [1st Dept 2018]; Matter of Jaffe, 78 AD3d 152, 158 [1st Dept 2010]), andonly in rare instances will this Court depart from its general rule (Matter of McHallam, 160 AD3d 89, 92 [1st Dept 2018]; Matter of Lowell, 14 AD3d 41 [1st Dept 2004] appeal dismissed 4 NY3d 846 [2005] lv denied 5 NY3d 708 [2005]).
Although the Second Circuit imposed public reprimand, an upward departure to a six-month suspension sought by the AGC is the appropriate discipline in this matter. The AGC correctly notes that in addition to the aggravating factors considered by the Second Circuit, respondent failed to notify this Court or the AGC that he had been disciplined by the Second Circuit as required by 22 NYCRR 1240.13(d). Further, respondent's attitude towards such an oversight was dismissive, claiming that he did not report his discipline because the Second Circuit reported it first. Respondent does not acknowledge that the reporting requirement is his alone, regardless of whether the foreign jurisdiction also reports the discipline. Although respondent has had a lengthy career, it is not untarnished and, as such, respondent's claim that a short suspension is tantamount to disbarment fails. Respondent claims that future clients will look him up and see that he has been disciplined. In making such a claim, respondent apparently forgets that this Court, as well as the Second Circuit, have already publicly disciplined him.
An upward departure is appropriate in this matter. First, the Second Circuit limited its discipline to a public reprimand because respondent was not a member of thebar of that jurisdiction. The order imposing discipline, however, noted that a suspensionwould have been warranted had he been admitted to the Second Circuit. Moreover, thefacts in this matter [*10]are similar to those in Matter of Colarossi (161 AD3d 100 [1st Dept2018]), in which this Court imposed reciprocal discipline and suspended Colarossi for six months based upon an order of suspension imposed upon him in Massachusetts for, inter alia, his neglect of his father's estate and his repeated and extended disobedience of the court's orders. Colarossi, like respondent, did not have a clean disciplinaryrecord.
Accordingly, the AGC's motion for reciprocal discipline should be granted, and respondent suspended for six months, effective 30 days from the date of this order, and until further order of this Court. Respondent's informal request for a sanction hearing should be denied.
All concur.
Wherefore, it is Ordered that the motion by the Attorney Grievance Committee for the First Judicial Department for reciprocal discipline, pursuant to Judiciary Law § 90(2) and 22 NYCRR 1240.13, is granted, and respondent, John Peter DeMaio, is suspended from the practice of law for a period of six months, effective 30 days from the date of this order, and until further order of this Court, and respondent's informal request for a sanction hearing is denied; and
It is further Ordered that, pursuant to Judiciary Law § 90, respondent, John Peter DeMaio, is commanded to desist and refrain from (1) the practice of law in any form, either as principal or agent, clerk or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and
It is further Ordered that, respondent, John Peter DeMaio, shall comply with the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15), which are made part hereof; and
It is further Ordered that if respondent, John Peter DeMaio, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith.
Entered: May 20, 2025

Footnotes

Footnote 1: The Second Circuit decision takes into consideration respondent's arguments in his defective motion, noting that it "could decline to consider that defective response, and treat his failure to cure the defects as a waiver" the arguments were considered "to avoid overlooking any possible legitimate excuse for his questionable conduct" (Grievance Panel Order at 5 n 2).

Footnote 2: This is an inaccurate recitation of Rule 3.4(c). Rule 3.4(c) states that an attorney must not "disregard or advise the client to disregard a standing rule of a tribunal or a ruling of a tribunal made in the course of a proceeding, but the lawyer may take appropriate steps in good faith to test the validity of such rule or ruling." Rule 3.3(f)(4), however, states that a lawyer appearing before a tribunal must not "engage in conduct intended to disrupt the tribunal."

Footnote 3: The Second Circuit explained that respondent was admitted in 2005, but his admission had lapsed.